## Case No. 16,252.

### UNITED STATES v. SEVELOFF.

[2 Sawy. 311; 1 17 Int. Rev. Rec. 20.]

District Court, D. Oregon. Dec. 10, 1872.

"INDIAN COUNTRY" DEFINED—INTERCOURSE LAWS —SALE OF SPIRITS IN ALASKA—REVENUE LAWS — JURISDICTION OF DISTRICT COURT OF OREGON.

1. The "Indian country," within the meaning of the act declaring it a crime to introduce spirituous liquors therein, is only that portion of

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

the United States which has been declared to be such by act of congress; and a country which is owned or inhabited by Indians in whole or in part is not, therefore, a part of the "Indian country."

2. The act of June 30, 1834 (4 Stat. 729), defining the limits of the "Indian country," and regulating the trade and intercourse with the Indian tribes therein, is a local act, and was therefore not extended propria vigore over the territory of Alaska, upon its cession to the United States.

[Cited in Waters v. Campbell, Case No. 17,-264; U. S. v. Williams, 2 Fed. 62; U. S. v. Bridleman, 7 Fed. 896; Kie v. U. S., 27 Fed. 352.]

3. The act of July 27, 1868 (15 Stat. 240), extending the laws "relating to customs, commerce, and navigation," over Alaska, construed not to extend the Indian intercourse act of 1834 (supra) over that territory, although the latter is a regulation of commerce "with the Indian tribes."

[Cited in U. S. v. Leathers, Case No. 15,581; U. S. v. Stephens, 12 Fed. 53.]

4. Section 20 of the act of 1834, supra, as amended by act of March 15, 1864 (13 Stat. 29), making the disposing of spirituous liquors to Indians a crime, is in this respect a general act, and prima facie applies wherever the subject-matter exists—an Indian under the charge of an agent appointed by the United States; but Alaska being acquired by the United States after the enactment of such amendment, it is doubtful whether it was extended over that territory propria vigore, upon its acquisition; and the act of July 27, 1868, supra, having provided for the subject of the introduction and use of distilled spirits in Alaska, by implication, congress thereby excluded such amendment therefrom.

5. The act of July 20, 1868 (15 Stat. 125), imposing a tax on distilled spirits, being a general act, and passed since the acquisition of Alaska, is in force there.

6. The jurisdiction of the district court for the district of Oregon over offenses committed in Alaska is conferred by section 7 of the act of July 27, 1868, supra, and by such section confined to violations of that act and the laws "relating to customs, commerce, and navigation," and therefore it has no jurisdiction over the crime of distilling spirits therein without paying a tax therefor.

[These were indictments against Ferueta Seveloff for unlawfully introducing liquors into the Indian country; and for being a distiller without paying the required tax. On demurrers to the indictments.]

Addison C. Gibbs, for plaintiff.

H. H. Northrup, for defendant.

DEADY, District Judge. These indictments were found by the grand jury of this district on November 11. The defendant was then in custody, upon a commitment issued by the United States commissioner, he having been before that time arrested in Alaska and brought to this district by "the military force of the United States," under section 23 of the Indian intercourse act of June 30, 1834 (4 Stat. 733).

The first indictment substantially alleges that the defendant, in the district of Oregon, and within the jurisdiction of this court, on ·June 8, 1872, did unlawfully introduce spirituous liquors, to wit, whisky, "into the Indian country, to wit, the island of Sitka, Alaska, United States of America."

The second one alleges that the defendant, of Sitka, Alaska, in the United States of America, and within the jurisdiction of this court, "on June 9, 1872, and prior thereto, without having paid the tax therefor, did presume to be and was a distiller of spirituous liquor, producing one hundred barrels or less of distilled spirits annually."

The third one alleges as the second one, that the defendant is of Sitka, and within the jurisdiction of this court, and that he, on June 8, 1872, at Sitka aforesaid, did dispose of spirituous liquors, to wit: whisky, to one John Doe, an Indian, whose name is unknown, and who resides at the Sitka Indian agency, and was, and is under the charge of one Major Harvey A. Allen, an Indian agent, appointed by the United States, and in charge of said agency, and commanding the military post at that place.

The defendant demurs to the indictments, and assigns for cause of demurrer to each of them: (1) That it does not state facts sufficient to constitute a cause of action. (2) That this court has not jurisdiction of the action.

The demurrers were argued and submitted together, on November 29. On the argument the points made in support of the demands, were: (1) The territory of Alaska, whether inhabited or owned by Indians or not, is not, in a legal sense, a part of the "Indian country," because not made so by act of congress. (2) That this court has no jurisdiction over crimes committed in the territory of Alaska, except in pursuance of section one of the act of July 27, 1868 (15 Stat. 240), and that the jurisdiction thereby conferred is limited to violations · of that act and the laws of the United States relating to customs, commerce and navigation, then and thereby extended over Alaska.

The district attorney maintained that Alaska is a part of the Indian country, because it is inhabited by Indians, and because the act defining the Indian country, and regulating trade and intercourse with Indians, and all other acts of congress not locally inapplicable, were extended over the country, proprio vigore, as soon as it was acquired from Russia.

"The Indian country," within the meaning of the statute, making it a crime to introduce spirituous liquors therein, is only that portion of the United States or its territories, which has been declared to be such by an act of congress. Because a country is inhabited or owned in whole or in part by Indians, it is not therefore an Indian country, within the purview of the trade and intercourse acts.

This is plain upon the reason of the thing, and has long since been settled by the highest authority. The act of June 30, 1834 (4 Stat. 729), defining "the Indian country," is as much a local act as the donation act of

Oregon, or the penal code of the District of Columbia. By its terms, "the Indian country" was limited to "that part of the United States west of the Mississippi, and not within the states of Missouri or Louisiana, or the territory of Alaska, and, also, that part of the United States east of the Mississippi river, and not within any state, to which the Indian title has not been extinguished."

At an early day, a question arose as to whether the territory of Oregon was at the date of the act, 1834, "a part of the United States west of the Mississippi," and therefore within the limits of "the Indian country," as defined thereby. Congress assuming that it was not provided by the act of June 5, 1850 (9 Stat. 437): That the law regulating trade and intercourse with the Indian tribes east of the Rocky Mountains, or such provisions of the same as may be applicable, be extended over the Indian tribes in the territory of Oregon.

In 1853, the supreme court of the territory of Oregon in U. S. v. Tom, 1 Or. 27, held that the act of 1834 was not in force to the westward of the Rocky Mountains, until specially extended over the territory of Oregon, by the act of June 5, 1850, (supra.) In delivering the opinion of the court, Chief Justice Williams says: "Great Britain and the United States made a treaty in 1818, by which the northern boundary of the latter was extended west on the forty-ninth parallel of north latitude, to the Stony Mountains; and the territory beyond this was described as country to be held in the joint occupancy of the two powers. The Rocky Mountains were then the western boundary of the United States for legislative purposes, and so continued until 1846. The act of 1834 shows in terms, that it was intended for a country over which the general government had absolute and exclusive jurisdiction. Congress, by express enactment in 1850, extended said act to this territory, for the reason, as must be supposed, that it was not in force before that time. The act of 1834 then has no vitality here, because Oregon is Indian country, but by virtue of the act of 1850, which gives it effect here, so far as its provisions may be applicable." Olney, J., in the same case, speaking of the act of 1834, says: "It was a local statute, and was no more extended by the last clause of our organic act" (9 Stat. 329) "than were the local laws of the District of Columbia." McFadden, J., says: "I concur in opinion that whatever vitality the act of 1834, entitled, etc., may have in this territory, is derivable from the act of congress of June, 1850, which extends the act of 1834, or so much of it as may be applicable to the situation of affairs in the territory of Oregon."

Contrary to this, there is an "opinion" by Attorney-General Cushing, 7 Ops. Attys. Gen. 295, to the effect that Oregon was a part of "the Indian country," because at the date of such opinion, 1855, it was "a part of the

United States west of the Mississippi." But this process of reasoning ignores the real inquiry, whether Oregon was such "a part of the United States," at the passage of the act, 1834, defining the Indian country, and within the real purview and intent of such act; and if it was not, being a local act, how and when did it become extended over Oregon, without and prior to the act of congress of June 5, 1850? The opinion also asserts that "the Indian country" in the acts of congress is not limited by any specific boundaries, but includes generally all "such portions of the acquired territory of the United States, as are in the actual occupation of the Indian tribes," while the Indian title thereto is unextinguished. In this conclusion, the "opinion" is in direct conflict with the decision of the supreme court in American Fur Co. v. U. S., 2 Pet. [27 U. S.] 358, where it was held, in an action to forfeit an Indian trader's goods, for taking whisky into "the Indian country" for the purpose of disposing of "the same among the Indian tribes," that a country purchased from the Indians subsequent to the act of March 30, 1802 (2 Stat. 139), and therefore no longer within the specific limits of "the Indian country" as defined by section 1 of said act, was not such country within the meaning of the trade and intercourse act, although it was then frequented and inhabited exclusively by Indian tribes. The fact that the Indian title to the country in question had been extinguished, subsequent to March 30, 1802, was only material to the decision, because the act of that date defining the boundary line between the said Indian tribes and the United States, expressly provided that if said line should thereafter be varied by treaty, then the provisions of such act should "be construed to apply to the line so varied," as if it were the original one. Therefore, it appears that the court held that the treaty of purchase of the lands wherein the supposed offense was committed, changed the line between the tribes and the United States, so as to exclude the lands so purchased from the limits of the Indian country.

But the act of 1834, supra, defines the Indian country absolutely by metes and bounds, and no subsequent purchase of lands within these limits would of itself operate to take them out of the category of Indian country, or except them from the laws regulating trade and intercourse with Indians who might be found thereon. Nor can the act of 1834 be held to have extended itself or migrated over Alaska upon its cession by Russia to the United States; for although such act by its terms applied to a large tract of country, and it were even uncertain whether its western boundary stopped at the Rocky Mountains or extended to the Pacific Ocean, still it was purely a local law, and contained no provision by which it should in the future be extended in any direction—as to California or Alaska—upon the contingency of their acquisition by the United States.

Did the act of 1868, supra, extend the act of 1834, supra, over Alaska? By section 1 of that act "the laws of the United States relating to customs, commerce and navigation" were extended over that country, and this language, taken unqualifiedly, is broad enough to carry with it the laws regulating "trade and intercourse" with the Indian tribes in Alaska.

The power to regulate commerce is conferred upon the national government by the constitution (article 1, § 8), in the same language, and upon the same terms in the case of "foreign nations," the "several states," and the "Indian tribes." It is under this clause that congress exercises the power to regulate trade and intercourse with the Indian tribes, as well without as within the Indian country. U. S. v. Cisna [Case No. 14,795]; U. S. v. Holliday, 3 Wall. [70 U. S.] 416. In the leading case of Gibbons v. Ogden, 9 Wheat. [22 U. S.] 189, Chief Justice Marshall says: "Commerce, undoubtedly, is traffic, but ·it is something more; it is intercourse."

Unless, then, there is something in the circumstances of the case or in the act, from which it appears that congress did not intend to use the phrase, "laws relating to commerce," in an unqualified sense, it follows that the act of 1834 is in force in Alaska, as a regulation of commerce with the Indian tribes therein.

Considering that the laws regulating what is deemed commerce with the Indian tribes are generally confined to intercourse with them, and are mostly of a local character, and intended as a restriction upon commerce in the popular sense of the word, rather than otherwise—as a sort of police regulation to preserve the Indians from the injurious consequences of unrestricted intercourse with the white population, it does not appear probable that congress intended to extend any laws over Alaska, relating to commerce, except those relating to commerce "between foreign nations and the several states."

But in addition to this consideration, it appears that the whole subject of the introduction and use of distilled spirits in relation to all the inhabitants of Alaska, whether Indians or other, is regulated by the act of 1868. Section 4 provides: "That the president shall have power to restrict and regulate or to prohibit the importation and use * * * * of distilled spirits into and within the said territory," and also for the forfeiture of such spirits introduced or used contrary to such regulation, and for the punishment of the persons engaged in the violation thereof.

Under these circumstances, I conclude that the territory of Alaska is not a part of "the Indian country," so declared by law, whatever it may be in fact, and therefore it is not a violation of section twenty of the act of 1834, under which the first indictment is found to introduce spirituous liquors therein.

As to the second indictment, its sufficiency does not turn upon the point whether Alaska is a part of "the Indian country" or not. Section 20 of the act of 1834, as amended by the acts of February 13, 1862 (12 Stat. 339), and March 15, 1864 (13 Stat. 29), makes the disposing of spirituous liquors to any Indian under the charge of any Indian agent a crime, without reference to the locality in which the act was done. U. S. v. Holliday, supra, 418.

In this respect the act is a general one, and prima facie applies wherever in the United States the subject matter exists—that is, "an Indian under the charge of an Indian agent appointed by the United States." But this feature of the act being enacted as early as 1864, before Alaska was a part of the United States, it is not clear upon authority whether it extended proprio vigore, to Alaska upon its cession to the United States. It has been so common a habit of congress upon the acquisition of territory to specially extend the laws of the United States over it, that an impression seems to prevail that without such action these laws would not affect territory acquired after their passage. For my own part, I can see no good reason why any general law of the United States does not become in force at once. in any country acquired by it, without reference to the time of its passage.

Nevertheless, I am inclined to the opinion that if congress had intended this or any other provision of the intercourse act to be in force in Alaska, it would, in accordance with its common practice, have so declared in the act of July 27, 1868. This consideration. taken in connection with the provision already referred to in section four of such act, apparently intended to give the president power to provide by regulation for the whole subject of the introduction and use of ·distilled spirits in Alaska, points to the conclusion that congress has by implication excluded the amendment of 1864, touching the disposition of spirituous liquor to Indians, from the territory of Alaska, and left the subject to be governed by the act of 1868, supra.

I would not be understood as stating this conclusion without doubt. On the contrary, I have reached it with hesitation, and express it subject to correction. But in this case, it is safer to err, if at all, by declining the jurisdiction than to accept it. If congress should think it desirable that this or any other provision of the Indian intercourse act should be in force in Alaska, it can so provide, beyond doubt.

The third indictment is founded on section 44 of the act of July 20, 1868 (15 Stat. 142), imposing taxes on distilled spirits, etc. The treaty of purchase was concluded March 30, 1868, and this act being a general one and passed after that date, there can be no doubt that it is in force in Alaska as in any other part of the United States. But, notwithstanding this, it is equally clear that the demurrer is well taken. The jurisdiction of this court over offenses committed in Alaska is conferred by section seven of the act of July 27,

1868, and by such section confined to violations of that act and of the laws "relating to customs, commerce and navigation," thereby extended over that territory. It is only necessary to state, that the crime charged in this indictment is not a violation of either of these acts, and therefore not within the jurisdiction of this court.

The demurrers are sustained.