In the case of Evers v. Sager, 28 Mich. 47, the court says:

"If the court possessed the power to order or allow such an amendment, irrespective of the stipulations of the parties, the sureties would have been bound by its action, because their obligation must be understood as contemplating a possible exercise of such power."

Numerous other authorities might, no doubt, be found on this point under consideration. Enough have been cited to establish that where property under seizure has been delivered to a claimant on a bond for value, conditioned he will pay the value into court if a final decree of condemnation be rendered against the property, his liability and that of his sureties is fixed as soon as the court has legally rendered such a decree in the action. And it is immaterial whether the decree has been rendered on the original libel, or on a libel that has been legally and properly amended, subsequently to the execution of the bond.

12 F. 52

## UNITED STATES v. STEPHENS.

Circuit Court, D. Oregon.

May 15, 1882.

Rufus Mallory, for plaintiff.
Cyrus Dolph, for defendant.

DEADY, District Judge.

On March 30, 1882, an information was filed by the district attorney accusing the defendant, by the first count, of the crime of introducing spirituous liquors into the district of Alaska contrary to law; and by the second count, of the crime of "attempting" to so introduce such liquors into said district. The defendant demurs to the information because it does not state facts sufficient to constitute a

crime. Upon the argument of the demurrer it was abandoned as to the first count, and insisted upon as to the second. This count alleges that on July 14, 1879, the defendant, being in the district of Alaska, wrote and transmitted a letter to a certain firm in San Francisco, California, wherein and whereby he requested said firm to ship and send to him at Fort Wrangle, in said district, 100 gallons of whisky; the defendant then well knowing that said firm were then wholesale dealers in spirituous liquors, and owned and possessed said 100 gallons of whisky; "and he thereby contriving and intending to introduce the said 100 gallons of whisky into the said district of Alaska."

In U. S. v. Seveloff, Fed.Cas.No.16,252, 2 Sawy. 311, the district court for this district having decided that the district of Alaska was not "Indian country," and that the act of June 30, 1834, (4 St. 729), regulating the trade and intercourse with the Indian tribes, was not in force therein, congress, in the general appropriation act of March 3, 1873, (17 St. 530), amended section 1 of the Alaska act of June 27, 1868, (15 St. 240; section 1954, Rev.St.), so as to extend over that country sections 20 and 21 of said act of June 30, 1834 (see 25 U.S.C.A. §§ 223, 241, 251, and notes) as well as the acts relating "to customs, commerce, and navigation."

The first of these sections provides, among other things, that "if any person shall introduce or attempt to introduce any spirituous liquors or wine into the Indian country," except supplies for the army under the direction of the war department, he "shall forfeit and pay a sum not exceeding $300."

By the act of March 3, 1847, (9 St. 203), said section 20 was amended so that upon a conviction before the proper district court of such act or attempt the party should be punished by imprisonment not exceeding one year. The section was again amended by the acts of February 13, 1862, (12 St. 339), and March 15, 1864, (13 St. 29; section 2139, Rev.St. [25 U.S.C.A. § 241 note]). By these latter amendments the maximum punishment for a violation of the section was fixed at two years' imprisonment and

$300 fine; and jurisdiction was given to the circuit court as well as the district.

By section 2 of the Alaska act, supra, (section 1955, Rev. St.), the president was given "power to restrict and regulate or to prohibit the importation and use of fire-arms, ammunition, and distilled spirits into and within the territory of Alaska." It is a question whether this provision, so far as distilled spirits are concerned, was not superseded and repealed by the extension of said section 20 over Alaska by the act of March 3, 1873, supra. This section, as has been stated, absolutely prohibits the introduction of spirituous liquors, which of course includes distilled spirits, into Alaska, except for the use of the army, by permission of the war department. Without doubt, as to the executive power to restrict or prohibit, the later act supersedes the earlier one. A statute power in the president to restrict or prohibit is certainly rendered nugatory by a subsequent act which absolutely prohibits. But as to the power "to regulate," which naturally implies the power to permit, the case is not so clear. Probably the better conclusion is that the acts should be construed as in pari materia, and both have effect so far as possible. Upon this construction of the statutes the law concerning the introduction of spirituous liquors and wine into Alaska is that such introduction is absolutely prohibited, subject to the power of the war department to permit the same for the use of the army, and the power of the president to permit the introduction of distilled spirits, but not wine, for any purpose.

It is doubtful if any attempt to commit an offense of this character is indictable at common law, and this is probably the reason why it was made so specially by the act defining the crime. 1 Whart.Crim.Law, § 177; 1 Bish.Crim.Law, §§ 684, 687.

It is said that the subject of attempt to commit crime is "less understood by the courts" and "more obscure in the text-books" than any other branch of the criminal law. Bish.Crim.Law, § 657. And certainly there is none in some repects more intricate and difficult of comprehension. It is almost impossible to comprehend all cases of attempt in a definition that does not necessarily run into a mere enumeration of instances. It is easy to say that there must be a

combination of intent and act—an intent to commit a crime and an act done in pursuance of such intent, which falls short of the thing intended.

There are a class of acts which may be fairly said to be done in pursuance of or in combination with an intent to commit a crime, but are not in a legal sense a part of it, and therefore do not with such intent constitute an indictable attempt; for instance, the purchase of a gun with a design to commit murder, or the purchase of poison with the same intent. These are considered in the nature of preliminary preparations—conditions, not causes—and, although co-existent with a guilty intent, are indifferent in their character, and do not advance the conduct of the party beyond the sphere of mere intent. They are, it is true, the necessary conditions, without which the shooting or poisoning could not take place, but they are not in the eye of the law the cause of either. 1 Whart.Crim.Law, §§ 178, 181; 1 Bish.Crim.Law, § 668 et seq.; People v. Murray, 14 Cal. 160.

Dr. Wharton says, (supra, § 181): "To make the act an indictable attempt it must be a cause, as distinguished from a condition; and it must go so far that it would result in the crime unless frustrated by extraneous circumstances."

Bishop says, (supra, § 669):

"It is plain that if a man who has a wicked purpose in his heart does something entirely foreign in its nature from that purpose, he does not commit a criminal attempt to do the thing proposed. On the other hand, if he does what is exactly adapted to accomplish the evil meant, yet proceeds not far enough in the doing for the cognizance of the law, he still escapes punishment. Again, if he does a thing not completely, as the result discloses, adapted to accomplish the wrong, he may under some circumstances be punishable, while under other circumstances he may escape. And the difficulty is not a small one to lay down rules, readily applied, which shall guide the practitioner in respect to the circumstances in which the criminal attempt is sufficient."

In People v. Murray, supra, the defendant was indicted for an attempt to contract an incestuous marriage, and was found guilty. From the evidence it appeared that he in-

tended to contract such marriage, that he eloped with his niece for that purpose, and requested a third person to get a magistrate to perform the ceremony. Upon an appeal the judgment was reversed. Chief Justice Field, delivering the opinion of the court, said:

"It [the evidence] shows very clearly the intention of the defendant, but something more than mere intention is necessary to constitute the offence charged. Between preparation for the attempt and the attempt itself there is a wide difference. The preparation consists in divising or arranging the means or measures necessary for the commission of the offence; the attempt is the direct movement towards the commission after the preparations are made; * * * but until the officer was engaged, and the parties stood before him, ready to take the vows appropriate to the contract of marriage, it cannot be said, in strictness, that the attempt was made. The attempt contemplated by the statute must be manifested by acts which would end in the consummation of the particular offense, but for the intervention of circumstances independent of the will of the party."

In the case under consideration, to constitute the attempt charged in the information, there must have been an intent to commit the crime of introducing spirituous liquors into Alaska, combined with an act done in pursuance of such intention, that, apparently, in the usual course of events, would have resulted in such introduction, unless interrupted by extraneous circumstances, but which actually fell short of such result. But it does not appear that anything was done by the defendant towards the commission of the intended crime of introducing spirituous liquors into Alaska but to offer or attempt to purchase the same in San Francisco. The written order sent there by the defendant was, in effect, nothing more or less than an offer by him to purchase the 100 gallons of whisky; and it will simplify the case to regard him as being present at the house of the San Francisco firm at the time his order reached them, seeking to purchase the liquor with the intent of committing the crime of introducing the same into Alaska. But the case made by the information stops here. It does not show that he bought any liquor. Whether he changed his mind

and countermanded the order before the delivery of the goods, or whether the firm refused to deal with him, does not appear. Now, an offer to purchase whisky with the intent to ship it to Alaska is, in any view of the matter, a mere act of preparation, of which the law takes no cognizance. As the matter then stood, it was impossible for the defendant to attempt to introduce this liquor into Alaska, because he did not own or control it. It was simply an attempt to purchase—an act harmless and indifferent in itself, whatever the purpose with which it was done. But suppose the defendant had gone further, and actually succeeded in purchasing the liquor, wherein would the case differ from that of the person who bought the gun or poison with intent to commit murder, but did no subsequent act in execution of such purpose? In all essentials they are the same. A purchase of spirituous liquor at San Francisco or Portland, either in person or by written order or application, with intent to commit a crime with the same,—as to dispose of it at retail without a license, or to a minor, or to introduce it into Alaska,—is merely a preparatory act, indifferent in its character, of which the law, lacking the omniscience of Deity, cannot take cognizance. At what period of the transaction the shipper of liquor to Alaska is guilty of an attempt to introduce the same there is not very easily determined. Certainly, the liquor must first be purchased, obtained in some way, and started for its illegal destination. But it is doubtful whether the attempt, or the act necessary to constitute it, can be committed until the liquor is taken so near to some point or place of "the main-land, islands, or waters" of Alaska as to render it convenient to introduce it from there, or to make it manifest that such was the present purpose of the parties concerned. But this is a mere suggestion, and each case must be determined upon its own circumstances.

The demurrer is sustained to the second count, and overruled as to the first.