## Case No. 15,528a.

### UNITED STATES v. KIE.

### [7 West Coast Rep. 6.]

District Court, D. Alaska. May Term, 1885.

INDIAN COUNTRY—ALASKA—OFFENSE AGAINST IN-
DIAN—JURISDICTION OF DISTRICT COURT.

The territory of Alaska is not "Indian coun-
try," within the meaning of that term as used
in the acts of congress; and, consequently, the
district court of the district of Alaska has juris-
diction to try an Indian for an offense committed
by him against another Indian in such territory,
prior to the act of March 3, 1885 [23 Stat. 385].

Motion to discharge the defendant.

McALLISTER, District Judge. A motion
has been made for the discharge of the pris-
oner, on the ground that the evidence before
the court shows that the crime was commit-
ted by an Indian on the person of another
Indian in the territory of Alaska; and it is
claimed by counsel for the prisoner that
Alaska is Indian country, and that this court
has no jurisdiction over an offense commit-
ted by an Indian against another Indian in
"Indian country." As the crime charged in
the indictment was committed, as is alleged,
in September, 1884, the recent act of con-
gress, approved March 3, 1885, which act
gives to the court jurisdiction over crimes
committed by an Indian, against another In-
dian within any territory of the United States,
and within or without an Indian reservation,
this late act, not being retroactive, cannot
apply to the present case, and the law in re-
gard to "Indian country," as contained in
the statutes on the day that this crime is al-
leged to have been committed, must govern
the decision of the question now before the
court.

The evidence shows that the prisoner,
Charles Kie, is an Indian of the Stickeen
tribe, that he is charged with having killed
his wife Nancy, an Indian of the Chilcat
tribe, at the town of Juneau, within this ter-
ritory. The question, therefore, which the
court is now called upon to decide is wheth-
er or not the territory of Alaska is "Indian
country." If it is Indian country, then the
prisoner, who is an Indian, and stands char-
ged with having committed a crime against
the person of another Indian within this ter-
ritory, is most certainly entitled to the bene-
fit of the law passed by congress in regard to
"crimes committed by an Indian against the
person or property of another Indian in the
'Indian country.'" And the Revised Stat-
utes, by section 2146, expressly exclude from
the jurisdiction of the United States the case
of a crime committed in the "Indian coun-
try," by one Indian, against the person or
property of another Indian, and consequent-
ly this court would not have jurisdiction to
try the indictment. If, on the other hand,
this territory has not been declared by law to
be Indian country, and the court should so
hold, the law passed by congress for the gov-
ernment of such country would, therefore,

not be in force here, and this court, sitting as
a territorial district court, and administering
the laws of this territory, would appear to
have jurisdiction to try the prisoner for the
offense with which he stands charged.

The law in regard to "crimes committed
in the Indian country by an Indian against
another Indian" is, as I read it, as follows:
Title 70 of the Revised Statutes relates to
crimes against the United States, and in chap-
ter 3, which speaks of crimes arising within
the maritime and territorial jurisdiction of
the United States, it provides that "every per-
son who commits murder  *  *  *  within
any fort, arsenal, dock yard, magazine or in
any other place or district of country under
the exclusive jurisdiction of the United States
*  *  *  shall suffer death." Title 28 of the
Revised Statutes relates to Indians, and the
subtitle of chapter 4 is "Government of In-
dian Country." It includes many provisions
regulating the subject of intercourse and
trade with the Indians in Indian country, and
imposes penalties and punishment for vari-
ous violations of them. Section 2142 pro-
vides for punishment of assaults, with deadly
weapons and intent, by Indians upon white
persons, and by white persons upon Indians;
section 2143 for the case of arson, in like
cases; and section 2144 provides that "the
general laws of the United States defining
and prescribing punishments for forgery and
depredations upon the mails shall extend to
the Indian country." The next two sections
are as follows:

"Sec. 2145. Except as to crimes, the pun-
ishment of which is expressly provided for in
this title, the general laws of the United
States as to the punishment of crimes com-
mitted in any place within the sole and exclu-
sive jurisdiction of the United States, except
the District of Columbia, shall extend to the
Indian country.

"Sec. 2146. The preceding section shall not
be construed to extend to [crimes committed
by one Indian against the person or property
of another Indian, nor to] any Indian com-
mitting an offense in the Indian country who
has been punished by the local law of the
tribe, or to any case when by treaty stipula-
tions the exclusive jurisdiction over such of-
fenses is or may be secured to the Indian
tribes respectively."

That part of section 2146 placed within
brackets was in the act of the 27th of March,
1854, c. 26 (10 Stat. 270), was then omit-
ted by the revisers in the original revision,
and restored by the act of the 18th of Feb-
ruary, 1875, c. 50 (18 Stat. 318), and now ap-
pears in the second edition of the Revised
Statutes. It may be assumed, for the pur-
poses of this opinion, that the omission in the
original revision was inadvertent, and that
the restoration evinces no other intent on the
part of congress than that the provision
should be considered as in force, without in-
terruption, and not a new enactment of it
for any other purpose than to correct the er-

ror of the revision. Section 2145, Rev. St. therefore, extends the general laws of the United States as to the punishment of crimes committed in any place within their sole and exclusive jurisdiction, except the District of Columbia, to the "Indian country." But section 2146 expressly excepts from its operation "crimes committed by one Indian against the person and property of another Indian in the Indian country." Therefore, if the crime with which the prisoner stands charged was committed in the Indian country, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, which laws were extended to the Indian country by section 2145, are not applicable; as section 2146 expressly excepts from its operation the case of a crime committed in the Indian country by one Indian against the person or property of another Indian.

The provisions now contained in sections 2145 and 2146 of the Revised Statutes were first enacted in section 25 of the Indian intercourse act of 1834 (4 Stat. 733). Prior to that, by the act of 1796 [1 Stat. 469], and the act of 1802 [2 Stat. 139], offenses committed by Indians against white persons and by white persons against Indians were specifically enumerated and defined, and those by Indians against each other were left to be dealt with by each tribe for itself, according to its local customs. The policy of the government in that respect has been uniform, as was said by Mr. Justice Miller, delivering the opinion of the court in U. S. v. Joseph, 94 U. S. 614, 617: "The tribes for whom the act of 1834 was made, were those semi-independent tribes whom our government has always recognized as exempt from our laws, whether within or without the limits of an organized state or territory, and, in regard to their domestic government, left to their own rules and traditions, in whom we have recognized the capacity to make treaties, and with whom the government, both state and national, deals, with a few exceptions only, in their national or tribal character, and not as individuals." As I understand the law, as declared by congress, if this territory is "Indian country," this court has no jurisdiction, the prisoner being an Indian and charged with having committed a crime against another Indian in this territory. He therefore comes within the provisions of section 2146, and, if he is punished, it must be by the laws, manners, and customs of his tribe.

But, is the territory of Alaska Indian country? Has it been so declared by law? There are several able opinions on this question by Judge Deady, in Sawyer's Reports. In the first of these cases, the case of U. S. v. Seveloff [Case No. 16,252], that learned judge held that "Alaska was not Indian country, so declared by law; * * * that, because a country is inhabited or owned, in whole or in part, by Indians, that it is not therefore an Indian country; * * * that the act of 1834, the

Indian intercourse act, cannot be held to have extended itself or migrated over Alaska upon its cession by Russia to the United States; * * * that, if congress should think it desirable that any provision of the Indian intercourse act should be in force in Alaska, it can so provide beyond doubt." And, in March, 1883, congress did legislate in regard to the matter by amending section 1 of the Alaska act of July 27, 1868 (15 Stat. 240), by the act of March 3, 1873 (7 Stat. 530), so as to extend over the territory of Alaska sections 20 and 21 of the intercourse act of 1834; and the territory, so far as the introduction and disposition of spirituous liquor is concerned, became what is known as "Indian country." In the case of Water v. Campbell [Case No. 17,264], decided in 1876, the same learned judge held that Alaska was not "Indian country," in the technical sense of that term, any further than congress has made it so, and referred to U. S. v. Seveloff [supra], and In re Carr [Case No. 2,432]. Again, in the case of U. S. v. Stephens [12 Fed. 52], which was decided in 1882, the court refers to it from decisions to the effect that Alaska is not "Indian country," except in so far as sections 20 and 21 of the intercourse act of 1834 have made it so. If, therefore, this territory is "Indian country," it must be because congress has so declared it; but I do not find that congress has, in the various laws passed for the government of this country, anywhere declared Alaska "Indian country." On the contrary, congress, by amending the Alaska act of 1868 by the act of March, 1873, and making two sections of the Indian intercourse act of 1834 applicable to Alaska, has so legislated in regard to the matter, that the natural and plain inference and meaning to be gathered from the various statutes is that Alaska is "Indian country" for the purposes of section 20 and 21 of the act of 1834, but is not "Indian country" in any other sense. 14 Op. Attys. Gen. contains, at page 327, a letter from the honorable attorney general to the secretary of war, under date of November 13, 1873. This letter, it will be observed, was written after the two above-mentioned sections had been made applicable by the amendment of March, 1873. The attorney general said, in answer to the direct question "as to whether or not the territory of Alaska was embraced within the term 'Indian country,'" that in his opinion, Alaska is to be regarded as "Indian country" as to this matter, namely, the introducton of spirtuous liquors, to which sections 20 and 21 of the act of 1834 apply. Then, in September, 1878, the same question was submitted to the attorney general by the secretary of the treasury (16 Op. Attys. Gen. 141): and the the attorney general, in his answer, says: "In the opinion of my predecessor, dated in 1873, an answer to the inquiry whether the territory of Alaska was embraced within the term 'Indian country,' he holds that, as to the provisions of sections 20 and 21 of the

intercourse act, which were made applicable by the amendment of March, 1873, Alaska is to be regarded as 'Indian country'; but it will be observed that he limits his opinion to these two sections, and does not hold that, in the general use of the term, Alaska is to be treated as 'Indian country,' and be subjected to all the laws which have been made in relation to such country. * * * The provisions of the act of 1834 are not in terms extended over the territory of Alaska. When two sections of the same statute are expressly made applicable to a certain people by extension, it must be inferred that there was no intention, on the part of congress, to extend more than those two sections. Alaska cannot be considered merely as an Indian country. It is inhabited, to a limited extent, by white persons, whose rights, property, and religion, which were guarantied by the treaty between the United States and Russia, should be protected by the United States, and the whole territory cannot be subjected to the rules applied to 'Indian country' until, at least, congress should expressly render it subject to them." The article of the treaty referred to reads as follows: Article 3 of the convention between the United States of America and his majesty the emperor of Russia for the cession of the Russian possession in North America to the United States, concluded at Washington, March 30, 1867, provides that: "The inhabitants of the ceded territory, according to their choice reserving their natural allegiance, may return to Russia within three years; but if they should prefer to remain in the ceded territory, they, with the exception of the uncivilized native tribes, shall be admitted to the enjoyment of all the rights, advantages, and privileges of citizens of the United States, and shall be maintained and protected in the enjoyment of their liberty, property, and religion. The uncivilized native tribes will be subject to such laws and regulations as the United States may from time to time adopt in regard to aboriginal tribes of that country."

The above authorities certainly are strongly against this being Indian country. The cases referred to in Sawyer's Reports—commencing with U. S. v. Seveloff, decided in 1872, before sections 20 and 24 were made applicable, and extending to 1882, when U. S. v. Stephens was decided—are all to that effect. The opinions of the attorneys general are also directly in point. These authorities hold substantially that Alaska is not "Indian country," because congress has not declared it so; that the act of 1834 did not extend itself proprio vigore, over Alaska, on its cession to the United States; that, congress having made two sections of the act of 1834 applicable, it must be inferred that there was no intention to extend more than those two sections; that the country is inhabitable by white persons whose rights, property, and religion are guarantied

by treaty; that the act of 1834 was a local act, and contained no provision by which it should in the future be extended in any direction.

Counsel for the prisoner rely to a great extent on the case of Ex parte Crow Dog, 109 U. S. 556, at page 561 [3 Sup. Ct. 396], where the court defines "Indian country." This case was decided at the October term of the supreme court, 1883. Mr. Justice Matthews delivering the opinion of the court. The question of jurisdiction was deemed by congress to be of such importance to the prisoner and the public, as to justify a special appropriation for the payment of the expenses incurred on his behalf in presenting the case to the supreme court of the United States. Congress, therefore, on the 3d of March, 1883 (22 Stat. 624), appropriated $1,000 for his defense. The facts are as follows: The prisoner Crow Dog, an Indian of the Sioux tribe, murdered another Indian of the same tribe, called Spotted Tail, on the Indian reservation in Dakota. He was convicted before the First judicial district court of Dakota, and the judgment was affirmed on a writ of error, by the supreme court of the territory. A petition for a writ of habeas corpus was made to the supreme court of the United States, and that court held that the district court of Dakota was without jurisdiction to find or try the indictment against the prisoner, and that the conviction and sentence were void. The court held that the offense was committed in "Indian country," but the argument in support of the jurisdiction of the district court was to the effect that, admitting that the offense was committed in "Indian country," section 2146, Rev. St., was not applicable, because it had been repealed by the operation and legal effect of the treaty with the different tribes of the Sioux Indians, of April, 1868, and an act of congress of February, 1877; but the direct point decided in the case was that "neither the provisions of the treaty with the Sioux Indians, that if had men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent, and notice by him, deliver up the wrongdoer to the United States, to be tried and punished according to its laws, nor any other provision in that act, nor the provision in article 8 of the agreement in the act of February, 1877, that they shall be subject to the laws of the United States, nor any other provision in that agreement or act, operated to repeal the provisions of Rev. St. § 2146, which except from the general jurisdiction of courts of the United States over offenses committed in 'Indian country,' crimes committed by one Indian against the person or property of another Indian." Therefore, this case is not a direct au-

thority on the question now before us, as there is also no doubt that, if this is "Indian country," section 2146 is applicable. The Case of Crow Dog is, however, most valuable for its discussion of the question as to what constitutes Indian country. At pages 560 and 561 [109 U. S., and page 396, 3 Sup. Ct.], Mr. Justice Matthews says: "The first section of the Indian intercourse act of June 30, 1834 (4 Stat. 729), defines the 'Indian country' as follows: 'That all that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas, and also that part of the United States east of the Mississippi river, and not within any state to which the Indian title has not been extinguished, for the purpose of this act, be taken and be deemed to be the Indian country.' Since the passage of that act great changes have taken place by the acquisition of new territory, by the creation of new states, and by the organization of territorial governments; and the Revised Statutes, while retaining the substance of many important provisions of the act of 1834, with amendments and additions since made regulating intercourse with the Indian tribes, has, nevertheless, omitted all definition of what now must be taken to be 'Indian country.' Nevertheless, although the section of the act of 1834, containing the definition of that date has been repealed, it is not to be regarded as if it had never been adopted, but may be referred to in connection with the provisions of its original context, which remain in force, and may be considered, in connection with the changes which have taken place in our situation, with a view of determining from time to time what must be regarded as Indian country when it is spoken of in the statutes. It is an admitted rule in the interpretation of statutes that clauses which have been repealed may still be considered in construing the provisions that remain in force. This rule was applied in reference to the very question now under consideration in Bates v. Clark. 95 U. S. 204. It was said in that case by Mr. Justice Miller, delivering the opinion of the court, that it follows. from this, that all the country described by the act of 1834 as 'Indian country,' remains Indian country as long as the Indians retain their original title to the soil, and ceases to be Indian country whenever they lose that title, in the absence of any different provision by treaty or by act of congress. In our opinion, that definition now applies to all the country to which the Indian title has not been extinguished within the limits of the United States, even when not within a reservation expressly set apart for the exclusive occupancy of Indians, although much of it has been acquired since the passage of the act of 1834, and notwithstanding the formal definition in that act has been dropped from the statutes, excluding, however, any territory embraced within the extreme geographical limits of a state, not ex-cepted from its jurisdiction by a treaty or by statute, at the time of its admission into the Union, but saving, even in respect to territory not thus excepted, and actually in the exclusive occupancy of Indians, the authority of congress over it under the constitutional powers to regulate commerce with the Indian tribes, and under any treaty made in pursuance of it. U. S. v. McBratney, 104 U. S. 621. This definition, though now not expressed in the Revised Statutes, is implied in all those provisions, most of which were originally connected with it when first enacted. and which still refer to it. It would be otherwise impossible to explain these references, or give effect to many of the most important provisions of existing legislation for the government of 'Indian country.' "

Now, does the above description of what constitutes Indian country, enlarge or extend the original description in the act of 1834? When the court refers to the act of 1834, resurrects it, as it were, it certainly is for the purpose of showing what was "Indian country," as described by that act. The Revised Statutes have omitted all definition of what must now be taken to be "Indian country." The court, therefore, refers back to the first section of the act of 1834. and the description therein contained. The court also refers to Mr. Justice Miller's definition in Bates v. Clark, 95 U. S. 204, as follows: "All the country described by the act of 1834, remains Indian country, so long as the Indians retain their original title to the soil, and ceases to be Indian country, whenever they lose that title, in the absence of any different provision by treaty or by act of congress." And the court then say: "In our opinion, the above definition applies to all the country to which the Indian title has not been extinguished within the limits of the United States, even when not within a reservation expressly set apart for the exclusive occupancy of Indians. although much of it has been acquired since the passage of the act of 1834 and notwithstanding the formal definition in that act has been dropped from the statutes." This second definition by the court, in which they adopt Justice Miller's definition as the foundation, would possibly seem, from its language, to extend the description of "Indian country," contained in the act of 1834; but it will be observed, on careful reading, that it does not go further than Justice Miller's definition, and his definition is expressly limited to the country described in the act of 1834. Therefore, if Alaska was embraced within the description of "Indian country," as contained in the act of 1834, and if the definition of what is now to be considered "Indian country" in Ex parte Crow Dog. is limited to the description in the act of 1834.—if this is so, then the Case of Crow Dog is to be considered rather as an authority against Alaska being "Indian country." It will be remembered that the case of U. S. v. Seveloff [Case No. 16,252] is a direct authority to the effect

that the act of 1834 defining the limits of the "Indian country" was not extended over Alaska.

Counsel for the prisoner also refer to the remarks of Mr. Justice Matthews in Ex parte Crow Dog, 109 U. S. 57 [3 Sup. Ct. 396], where the learned judge, speaking of the injustice of making Indians amenable to our laws, says: "It is a case where the law is sought to be extended over aliens and strangers, over the members of a community separated by race, by tradition, by the instincts of a free, though savage, life, from the authority and power which seeks to impose upon them the restraints of an external and unknown code, and to subject them to the responsibilities of civil conduct, according to rules and penalties of which they could have no previous warning; which judges them by a standard made by others, and not for them; which takes no account of the conditions which should except them from its exactions, and makes no allowance for their inability to understand it. It tries them, not by their peers, nor by the customs of their people, nor the law of their land, but by superiors of a different race, according to the law of a social state of which they have an imperfect conception, and which is opposed to the tradition of their history, to the habits of their lives, to the strongest prejudices of their savage nature; one which measures the red man's revenge, by the maxims of the white man's morality."

The above remarks are, no doubt, deserving of most careful consideration, and they apply with equal force to the case now before us. It no doubt has been the policy of the government to leave an Indian, who commits a crime against another Indian, to be punished by the laws, manners, and customs of his tribe. The remarks of Justice Matthews certainly should receive all the consideration that counsel claim for them, but they cannot change the law; and, however great a hardship it may be to put this prisoner on his trial, and try him, as Justice Matthews remarks, "not by his peers, nor by the customs of his people, nor the law of his land, but according to the law of a social state of which he can have but an imperfect conception, and which is opposed to the traditions of his history, and to the strongest prejudices of his savage nature;" however great a hardship this may be,—the remedy is with the lawmaking power. It is the duty of this court to administer the law as it is laid down. Prior to 1873, when congress amended the Alaska act of 1868, a law was greatly needed in regard to the introduction of spirituous liquors. The district court of Oregon had held that this territory was not "Indian country," and that the law prohibiting the introduction of liquor in such country was not in force here. The court further said: "If congress desires that this or any other provision of the intercourse act should be in force in Alaska, it can so provide beyond doubt."

And congress did so provide the next year, by making this territory "Indian country," as far as the introduction of liquor was concerned. In the case now before us, if congress think proper, they can extend the first section of the intercourse act of 1834 over Alaska, as they have already extended sections 20 and 21 of that act, and by so doing make this "Indian country," and thus extend over the Indians—the "uncivilized native tribes," as they are spoken of in the treaty—the provisions of section 2146, which excepts them from the jurisdiction of our laws, as far as crimes against each other are concerned.

It has been strongly urged in the argument that, if there is any doubt in regard to this question, the court should decline jurisdiction, and counsel refer to Mr. Justice Matthews' language, where he says, speaking of the territorial district court of Dakota, and of the advisability of holding that territory to be "Indian country": "The nature and circumstances of this case strongly reinforce this rule of interpretation. It is a case involving the judgment of a court of special and limited jurisdiction, not to be assumed without clear warrant of law It is a case of life and death. It is a case where, against an express exception in the law itself, that law, by argument and inference only, is sought to be extended over aliens and strangers." It is also urged on the court that the remarks of Justice Matthews, when he speaks of what is now to be considered as "Indian country," should control the decision of this court. In my judgment, the Case of Crow Dog [supra], and the case at bar are not parallel cases. The remarks of Justice Matthews, when he speaks of "Indian country," are most general, while, on the other hand, as I have before stated, there are four decisions of the United States district court of Oregon, in which that most learned and able judge distinctly holds that Alaska is not "Indian country." Therefore, as far as this court is controlled in the decision of this question by decided cases, those decisions of Judge Deady, which are directly on the question, and which certainly are of the highest authority, should, in my judgment, have far more weight with the court in determining this question than the remarks and general language of Justice Matthews, when considering whether or not the territory of Dakota was "Indian country."

Again, the fact that the Revised Statutes have omitted all definition as to what is now "Indian country" is important in considering this question. It would seem as if it was a definite term, especially when, to find what constitutes such country, you have to refer back to the original act of 1834. Prior to 1862, section 20 of the intercourse act of 1834 contained the words "an Indian in an Indian country"; but by the act of February 13, 1862 (12 Stat. 339), the words "any Indian under the charge of any Indian superintendent or agent" were substituted. This would seem to show that the term "Indian country" was

no longer expressive, was not definite enough to be continued in the statutes. That certain districts of country are to be considered as "Indian country" there can be no doubt. The opinion in Ex parte Crow Dog defines such country, though possibly in a general way. But can it be said that, in the absence of any precise definition defining such country; considering, also, that the term has been dropped from the Revised Statutes, and that the words "Indian country" were also dropped from section 20 of the act of 1834, and the words "Indian agent" substituted; considering, also, that the only definition is that contained in the first section of the act of 1834,—can it, then, be said that this territory, which was not embraced within the definition in the first section of the act of 1834 (as was distinctly held by the district court of Oregon), is, notwithstanding, "Indian country"? If it is, it must be because the definition by the court in Ex parte Crow Dog, as to what is now "Indian country," has so extended the original definition that the territory of Alaska is now included. In my opinion, the definition of the court in Crow Dog's Case does not extend the original definition; and, as Alaska was not included in that, it is not "Indian country," so declared by law.

The motion to discharge the prisoner on the ground that this court has no jurisdiction is therefore denied.

[NOTE. Subsequently the charge to the jury was delivered stating the difference between murder of the first degree, murder of the second degree, and manslaughter, and the difference commented upon. Case No. 15,528b. The jury returned a verdict of guilty of manslaughter, and the prisoner was sentenced to a term of 10 years' imprisonment and a fine of $100. The cause was taken to the circuit court on a writ of error. The district court was then directed to allow the plaintiff to move for a new trial, and if, on the hearing of the same, it did not appear that Kie was present, to grant the same, but otherwise to deny the motion, and give judgment against him. 27 Fed. 351.]