27 F. 351

## KIE v. UNITED STATES.

Circuit Court, D. Oregon.

May 1, 1886.

Alfred S. Frank, for plaintiff in error.
Lewis L. McArthur, for defendant in error.

DEADY, Judge.

This is a writ of error to the district court of Alaska, sitting at Sitka. The writ was allowed by the circuit judge, pursuant to section 7 of the act of May 17, 1884, concerning "a civil government for Alaska," (23 St. 24), which provides:

"Writs of error in criminal cases shall issue to the said district court from the United States circuit court for the district of Oregon, in the cases provided in chapter 176 of the Laws of 1879; and the jurisdiction thereby conferred on the circuit court is hereby given to the circuit court of Oregon."

The "Laws of 1879" here referred to is the act of March 3 of that year, (20 St. 354), which gives the circuit court for each judicial district jurisdiction of writs of error in criminal cases tried before the district court, where the sentence is imprisonment or fine not exceeding $300.

It appears from the record that on May 28, 1885, the plaintiff in error, Charles Kie, was indicted by a grand jury of the district court of Alaska, sitting at Sitka, for the crime of murder, alleged to have been committed about September 1, 1884, by stabbing a woman named Nancy, from which stabbing she then and there died. Kie demurred to the indictment, but the demurrer was overruled by the court; and afterwards, on a trial on the plea of "not guilty," he was by the jury convicted of the crime of manslaughter, and sentenced by the court to imprisonment for a term of 10 years and fined $100.

There is no formal bill of exceptions in the record, but it contains a statement of certain evidence given to the jury on the trial, which, by the argument of counsel, is so far to

have the effect of a bill of exceptions. From this it appears that the killing took place at the town of Juneau, situate on or near Takoo inlet, and distant about 80 miles north by east in an air line from Sitka, and at the date thereof the plaintiff in error was living in and belonged to a village of Alaskan aborigines near by; that the deceased, Nancy, was also an aboriginal Alaskan living with Kie as his wife, and that said Nancy was guilty of adultery, for which cause Kie killed her, as alleged in the indictment, he being permitted and authorized to do so by the laws and customs of the people of said village time out of mind, as a punishment for her misconduct; that on the close of the testimony a motion was made for the discharge of the defendant on the ground that, under sections 2145 and 2146 of · the Revised Statutes (25 U.S.C.A. §§ 217, 218 and note) the court had no jurisdiction of the defendant, which motion was denied; and that after the verdict was received a motion was made to set aside the same, and discharge the defendant, on the same ground, which was also denied, to which rulings of the court the defendant then and there excepted.

The following are the errors assigned:

"(1) The record does not show that the plaintiff in error was present at the trial, or when sentence was pronounced on him. (2) No mode of selecting a jury is provided by the organic act. (3) The court had no jurisdiction to try the cause, and the judgment rendered is void."

The last assignment will be considered first. It is based on the assumption that Alaska is "Indian country," within the meaning of that phrase as used in the Revised Statutes, and section 2146 thereof, which in effect prevents the courts of the United States from taking cognizance of any crime committed by one Indian against the person or property of another, in the Indian country.

In U. S. v. Seveloff, Fed.Cas.No.16,252, 2 Sawy. 311, I held that Alaska was not "Indian country" in the conventional sense of the term; that because a country is owned or inhabited, in whole or in part, by Indians or aborigines, it is not therefore "Indian country" within the meaning of that phrase, as used in the intercourse act of 1834 or the Revised Statutes. This ruling was followed and affirmed

in the cases of In re Carr, Fed.Cas.No.2,432, 3 Sawy. 317; Waters v. Campbell, Fed.Cas.No.17,264, 4 Sawy. 121; and U. S. v. Stephens (C.C.) 12 F. 52, 8 Sawy. 117; and again followed and vindicated in the court below, in an able opinion by District Judge McAllister, 7 W.C.R. 6. The Seveloff Case was decided in December, 1872; and on March 3, 1873, congress apparently gave its sanction to the theory of that case (17 St. 530) by amending section 1 of the Alaska act of 1868 (15 St. 240) so as to extend over the country sections 20 and 21 of the intercourse act of 1834 (see 25 U.S.C.A. §§ 223, 241, 251, and notes), prohibiting the introduction and disposition of spirituous liquors therein. As it rests with congress to say whether a district of country shall be considered "Indian country," so far as the intercourse between the aborigines thereof and other persons is concerned, this legislation, in my judgment, by at least a reasonable, if not a necessary, implication, is equivalent to a declaration that Alaska is not to be considered "Indian country," only so far as concerns the introduction and disposition of spirituous liquors therein.

Nor is this conclusion contrary to the ruling in Bates v. Clark, 95 U.S. 204, or Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, in the former of which Mr. Justice Miller said "that all the country described by the act of 1834 as Indian country remains 'Indian country' so long as the Indians retain their original title to the soil, and ceases to be Indian country whenever they lose that title, in the absence of any different provision by treaty or act of congress;" and in the latter of which Mr. Justice Matthews gives the above paragraph from Bates v. Clark, and adds:

"In our opinion, that definition now applies to all the country to which the Indian title has not been extinguished, within the limits of the United States, even when not within a reservation expressly set apart for the exclusive occupancy of Indians, although much of it has been acquired since the passage of the act of 1834, and notwithstanding the formal definition in that act has been dropped from the statutes."

The conclusion is not in conflict with the ruling in Bates v. Clark, because, as we have seen, Alaska was not described or included in the act of 1834, the same being at the

time foreign territory, and for the further reason that, if it had been, congress has since made special and different provision concerning the intercourse therein between the aborigines and others.

Nor do I think it is in conflict with the ruling in Ex parte Crow Dog, rightly understood. True, it is said in the opinion in the later case that the phrase may and does include territory acquired since the date of the act of 1834, and therefore not described in it. But the case then before the court arose in Dakota, a territory acquired from France in 1803, while the anomalous condition of Alaska was not probably considered by the court, or the language in question used with reference to it; but rather to the similar and contiguous territory acquired from Mexico in 1848, as New Mexico, Arizona, Nevada, Utah, and Western Colorado, which thereupon, in the language of section 1 of the act of 1834, (4 St. 729), defining or describing the Indian country, became and were included in "that part of the United States west of the Mississippi and not within the states of Missouri and Louisiana."

Nor is it at all probable that the aborigines of Alaska can or will be considered as dependent or domestic nations, or people having any title to the soil of the country, to be extinguished by the United States, as were the Indian tribes north and west of the Ohio river. The country was purchased from Russia in 1867. By article 2 of the treaty of purchase (Pub. Treat. 672) it is declared that "the cession of territory and dominion" thereby made, shall include "the right of property in all public lots and squares, vacant lands, and all public buildings, fortifications, barracks, and other edifices which are not private individual property." Article 3 provides that such of "the inhabitants of the ceded territory" as "prefer to remain" therein, "with the exception of the uncivilized native tribes, shall be admitted to all the rights, advantages, and immunities of citizens of the United States, and shall be maintained and protected in the free enjoyment of their liberty, property, and religion. The uncivilized tribes will be subject to such laws and regulations as the United States may from time to time adopt in regard to aboriginal tribes of that country." And article 6 declares such cession "to be free and unincumbered by any

reservations, privileges, franchises, grants, or possessions * * * by any parties, except merely private individual property holders; and the cession hereby made conveys all the rights, franchises, and privileges now belonging to Russia in said territory or dominion, and appurtenances thereto."

At the date of this session Russia owned this country as completely as it now does the opposite Asiatic shore; and the right of the inhabitants in and to the use of the soil was such, and only such, as it saw proper to acknowledge or concede to them. The United States took the country on the same footing, agreeing to respect the private property of individuals, and to make such regulations concerning the uncivilized natives, including, of course, their occupation of the soil, as it might deem best. Accordingly, congress, by the passage of the Alaska act of 1884, has provided a government for the country without any reservation or qualification as to the persons or classes of the inhabitants over and upon whom it shall have jurisdiction and authority. By this act (section 8) the laws of the United States relating to mining claims are extended over Alaska, and it is made a land-district, with a register and receiver to take proof of the location and make sale of such claims. A commission is also provided for, (section 12), "to examine into and report upon the condition of the Indians residing in said territory; what lands, if any, should be reserved for their use; what provision shall be made for their education; what rights by occupation of settlers should be recognized; and all other facts that may be necessary to enable congress to determine what limitations or conditions should be imposed when the land laws of the United States shall be extended to said district." And the unorganized Alaska act of July 27, 1868, (chapter 3, tit. 23, Rev.St.; 15 St. 240), is also continued in force except as modified by the act of 1884, (section 14); and "the importation, manufacture, and sale of intoxicating liquors in said district, except for medicinal, mechanical, and scientific purposes," is thereby prohibited under the penalties prescribed in section 4 of the act of 1868, (section 1955, Rev.St.), "for the importation of distilled spirits." How far this provision repeals or modifies said sec-

tion 4, and the act of 1870, supra, amending section 1 of the act of 1868, so as to extend over Alaska sections 20 and 21 of the intercourse act of 1834, it is not now material to consider; for, admitting that the latter act displaces or modifies the former one, it is equally manifest from the passage of the same that congress does not regard Alaska as being within the purview of the law governing the "Indian country," and therefore it is necessary to make special provision concerning the introduction and disposition of spirituous liquors therein; or that, from the fact of making such special provision, it is evident that congress intended to exclude the act of 1834, as a whole, therefrom. And as to the state of law on this subject, before this last enactment, see U. S. v. Stephens (C.C.) 12 F. 52, 8 Sawy. 116.

The people living in the village where this homicide was committed are a tribe or clan of the Thlinkets, a race of marine nomads that inhabit the coast from Mount St. Elias to the southern boundary of Alaska. They dwell in permanent villages during the winter, and wander about during the summer in search of food which is derived principally from the water. Petroff's Alaska, 165 et seq. In the disposition of the soil congress will doubtless make such provision for them, and the possession of their villages, as it may deem just and expedient. But for the discovery of gold in the vicinity no civilized man would ever be tempted to seriously interfere with or contest the right to such possession. And in such event it may be found best to provide that, for minor offenses peculiar to their social life and condition, the members of these tribes shall only be tried and punished by their own laws or customs, where they have any. Yet, if it is intended to impart to this people the elements of our civilization, as indicated by section 12 of the act of 1884, they must be first made subject to the law which conserves and maintains it, and not be allowed to practice with impunity such acts of barbarity as are involved in the charge against this plaintiff in error. But for the all-permeating and ever-present and persuasive power of the law, the progress of civilization among the most advanced people would be seriously and constantly retarded, if not checked, by the downward and backward tendency of

the mass, who cannot, without this potent agency, be educated and maintained in the necessary habit of self-restraint and justice to others. However this may be, in my judgment, as the law applicable to the subject now is, Alaska is not "Indian country," in the conventional sense in which that phrase is used in the act of 1834 and the Revised Statutes.

Yet I regard this judgment as erroneous and void, not for want of jurisdiction in the court to hear and determine the case, but because the sentence is in excess of the power of the court to impose. Section 3 of the act of 1884 provides for a district court for the district of Alaska, "with the civil and criminal jurisdiction" of a district and circuit court of the United States; and section 7 declares that "the general laws of the state of Oregon" then in force shall "be the law in said district, so far as the same may be applicable and not in conflict with the provisions" of that act, or "the laws of the United States." So far as the laws of the United States prescribe the jurisdiction of the district and circuit courts, or the method of their procedure, or define a crime and prescribe its punishment, the Alaska court is governed by them, and when these are silent, or make no provision on the subject, resort must be had to the laws of Oregon so far as they are applicable.

The defendant was indicted for the crime of murder under section 506 of the Criminal Code of Oregon, which defines the crime of murder in the first degree; and, being found guilty of manslaughter, was sentenced, under section 518 thereof, to imprisonment for 10 years, and to pay a fine of $100; and, in pursuance of section 209 of said Code, to be also imprisoned until said fine is paid, not exceeding one day for every two dollars thereof. But section 5339 of the Revised Statutes provides for the punishment of "every person who commits murder" in "any district of country under the exclusive jurisdiction of the United States." Section 5341 of the same (18 U.S.C.A. § 453 note) prescribes what killing in such a district constitutes manslaughter; and by section 1 of the act of March 3, 1875, (18 St. 473 [18 U.S.C.A. § 454 note]), it is provided that "a person convicted of manslaughter in any court of the United States" shall be punished by imprisonment not ex-

ceeding 10 years and a fine not exceeding $1,000. Now, Alaska is, and has been since 1867, "a district of country under the exclusive jurisdiction of the United States." Therefore, these statutory provisions concerning the commission and punishment of murder and manslaughter are in force therein, and necessarily exclude the operation or application there of any law of Oregon on these subjects.

In 1879 Kot-ko-wat, and in 1882 Ki-ta-tah, both aborigines of Alaska, were tried and convicted in this court, under the statute for murder committed in Alaska, and were punished with death.

No law of Oregon is to have effect in Alaska if it is in conflict with a law of the United States. There is such a conflict, within the meaning of the statute, not only when these laws contain different provisions on the same subject, but when they contain similar or identical ones. In the latter case it is the law of congress that applies, and not that of the state. In this case the proceeding, though professedly had under the Oregon statute, was, in contemplation of law, taken under the statute of the United States, and conforms sufficiently thereto, except in the matter of the sentence.

The United States statute (section 5296, Rev.St. [18 U.S.C.A. § 641 and note]) provides that in case any person is sentenced to pay a fine, and has been imprisoned 30 days solely for the non-payment thereof, he shall be discharged on showing his inability to pay the same. But by the sentence in this case the plaintiff in error, after serving his sentence of imprisonment, is to be confined 50 days longer for the non-payment of the fine of $100, or one day for each $2 thereof, without reference to his ability to discharge the same. And so the sentence, in effect, authorizes his imprisonment for 20 days longer than the law allows; and for this error the judgment is reversed, and the cause remanded, with directions to the district court to cause the plaintiff in error to be brought before it, to receive such sentence as the law warrants, and the court may deem proper.

This makes it unnecessary to consider the other assignments of error on this writ. But as they go to the validity of the proceeding anterior to the judgment, the case may

be brought here again for review if they are not now disposed of.

As to the second assignment of error very little need be said. The act of June 30, 1879, (21 St. 43 [18 U.S.C.A. §§ 411, 412, 415, 423, and notes]) makes provision for the selection and drawing of jurors in the national courts, and the district court of Alaska should conform to it. There is nothing in the record in this case to show that it did not, and the presumption is that it did. No objection appears to have been taken to the selection or drawing of the jury. The record simply states, in the usual way, when the case was called for trial, a jury came, and was duly impaneled and sworn.

But the question of who is qualified to serve as a juror in the district court of Alaska must be answered by the law of Oregon. Section 800 of the Revised Statutes, which declares that jurors in the national courts shall have the qualifications prescribed by the law of the state in which they sit, cannot apply, for there is no law of Alaska on the subject, unless it be the law of Oregon; and in either case it follows that the qualification of jurors in Alaska, and the liability of persons to serve as such, must be determined by a reference to this law. Sections 918, 919, and 920 of the Code of Civil Procedure contain the law of this state on the subject. They provide that a person is not competent to be a juror unless he is (1) a citizen of the United States; (2) a white male inhabitant of the county for the year before he is called; (3) over 21 years of age; and (4) in the possession of his natural faculties.

Who are citizens of the United States in Alaska, under article 3 of the treaty of 1867, may be a difficult question to determine. The treaty furnishes the law, but the difficulty, if any, will arise in the application of it. Under the treaty, the inhabitants of Alaska at that date who did not return to Russia within three years thereafter became citizens of the United States, excepting members of the uncivilized tribes. The word "white" in the second clause is no longer regarded as the law of the state; and is expressly displaced, so far as the courts of the United States are concerned, by the proviso to section 2 of the act of 1879, supra. The words "county in which he is returned," in the

same clause, must be held inapplicable to Alaska, where there are no counties, and their place supplied by the word "district." The following sections of the Code, providing for the selection of jurors and the formation of a jury-list by the county court from the assessment roll are of course inapplicable, as there are neither county courts nor assessment rolls in Alaska. And, besides, the act of 1879 prescribes another mode for selecting jurors.

The first assignment of error must also be allowed. It appears from the record that the plaintiff in error, who was in close custody, was brought into court on May 22, 1885, and arraigned, when his trial was set for June 1st. On that day, and all subsequent days of the trial, down to and including the sentence, June 8th, the record only shows that the parties came by their attorneys. In case of a felony, or where corporal punishment is involved, the defendant must be present during the trial and at the sentence; and the record should show this. But it is sufficient if his presence may be inferred from the same, and it need not be explicitly so stated at each stage of the procedure. Stephens v. People, 19 N.Y. 549; Whart.Crim.Pl. '& Pr. §§ 540, 875; State v. Cartwright, 10 Or. 193. But it would be a strained and unreasonable inference to say that Kie was present during this trial, and at the sentence, simply because he appears to have been present at the arraignment some days before; and particularly when the record states explicitly that the parties appeared by their attorneys each day during the trial, and at the sentence, from which it may rather be inferred that the plaintiff in error did not appear otherwise. But from the admission of counsel on the argument, it is morally certain that Kie was present during the trial, and that the failure of the record to show the fact is a mere misprision of the clerk, and therefore the district court will not be directed to set aside the verdict and grant a new trial, but only to allow the plaintiff in error to move therefor on that ground; and if, on the hearing of the same, it does not satisfactorily appear from the evidence submitted therewith that he was present, to grant the same; but otherwise to deny the motion, and give judgment against him according to the act of 1875.