UNITED STATES ex rel. KOEHLER et al. v. McGLINCHY et al.*

(District Court.  Sitka.  1887.)

1. PUBLIC LANDS ⊚═31—SQUATTERS' RIGHTS.

   Though the failure of Congress to extend the land laws of the United States to Alaska may be a source of annoyance to settlers, still they are entitled to protection in their right of possession.

2. PUBLIC LANDS ⊚═39(6)—TOWN SITES—HIGHWAYS.

   The banding together of a community of people, laying out and platting a town site, and the dedication of streets and alleys to public use, is legitimate, and will estop all who participated therein.

3. PUBLIC LANDS ⊚═31—POSSESSORY RIGHTS IN.

   Public necessity requires that all those who have immigrated here and are occupying the public domain must be protected in their possessory rights.

4. NAVIGABLE  WATERS  ⊚═36(3)—PUBLIC  LANDS—TIDE  LANDS— STREETS—WHARVES.

   The land lying between high and low water mark at the foot of Seward street leading to Gastineaux Channel, in the town of Juneau, and shown to be essential to the use and convenience of said street, is public property held by the government in trust for the coming state.  The defendants could not legally appropriate that portion of the beach between high and low water mark.  Koehler and his coplaintiff had a right to sue for the purpose of redressing an injury to themselves by the obstruction of the street, and when their interest was made to appear they acted in the attitude of redressing a continuing trespass and wrong against themselves and acted in behalf of all others who were or might be injured by the wrongful acts of the defendants.

5. NUISANCE ⊚═63—HIGHWAYS—NAVIGABLE WATERS.

   Driving piles on the beach where the tide ebbs and flows, between high and low water mark, at the foot of Seward street, so as to prevent the free use of said street, is such a nuisance as equity will abate.

Ball, Stanford & Heid, for plaintiffs.

J. F. Malony, of Juneau, for defendants.

DAWSON, District Judge.  Plaintiffs by their bill in equity allege in substance that the question involved is one of common interest affecting the rights of a community whose mem-

⊚═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Alaskan Reports, Haydon, 1888, vol. 1, p. 41.

bers are too numerous to be made parties to this action several-
ly; that the parties named in the bill and those unnamed have
a common interest in the subject-matter of this suit, and that
they constitute a class and community residing upon a certain
area of land lying and being in the district and territory of
Alaska known as Juneau City, situate on the northwest shore
of an inlet of water named and known as Gastineaux Channel,
an arm of the North Pacific Ocean; that said area of land has
been by common consent surveyed, platted, and laid off into
lots, blocks, and squares, with streets and alleys; that the plain-
tiffs named and the class and community mentioned are inhabit-
ants of and are residing on said lots in the area of land afore-
said; that they have title in severalty by occupancy to the lots
surveyed and numbered as aforesaid.

Petitioners then allege that in said survey of the town site
there was laid out and platted a street named and known as
Seward street, thirty-four feet in width, and extending from an
initial point, the description of which is not now known, in
a direct line to low-water mark in Gastineaux Bay or Inlet;
that the plaintiffs named and others live and have business
houses fronting on said street, and that defendants have will-
fully placed an obstruction at the foot of said street, between
high and low water marks, which they declare to be a public
nuisance, and pray to have the same abated.

The answer of defendants when pruned of extraneous mat-
ter amounts to a denial. The evidence in this case discloses
the following facts:

That in the year 1881, the citizens residing on the area of
land now known as Juneau City, procured one Hanus, of the
United States naval force, then stationed in Alaska, to survey,
lay off, and plat the town site of Juneau; and that at a public
meeting of the people then residing in Juneau they accepted
and ratified said survey, and have since that time acquiesced in
and erected buildings and made improvements with reference
to the lines and designations of lots, streets, and alleys set
forth in the survey and plat; that the plaintiffs and many
others have erected business and dwelling houses on the sides
of and adjacent to Seward street and now occupy the same;
that the defendants in the month of May, 1887, when many of
those interested were absent from Juneau serving the public
in the capacity of grand and petit jurors in the United States
District Court at Sitka, proceeded to obstruct Seward street

by driving piling and erecting framework upon the piling on the beach between high and low water mark at the foot of the street. The evidence shows further that an open beach at the foot of the street so as to admit of free and untrammeled egress and ingress to and from the bay is essential to the enjoyment, convenience, and use of the street; that lumber, fuel, and many articles of merchandise are necessarily brought ashore and landed by small boats, canoes, and other water craft; that the obstruction of the street in the manner shown prevents the landing of boats and the discharge of their cargoes at the foot of the street as had been customary before the erection of the obstruction. The question presented is by no means free from difficulty. The failure of Congress to extend the land laws to Alaska has rendered the title of the occupants of the soil precarious. But public necessity requires that those who have immigrated here and are occupying portions of the public domain must be protected in their possessory rights. It may be said to be generally, if not universally, conceded that the general principles of law must be applied to new kinds of property and new rights as they spring into existence in the progress and organization of society according to their nature and incidents and the common sense of the community. In this comparatively primitive community, where the oar is the great agent of propulsion, vessels of light tonnage are in daily use in carrying the commerce of the country from place to place and in bringing to the various points of land the necessities of the people, such as fuel, lumber, game, etc., and must have a safe and convenient place of landing and discharging their cargoes.

And although the people who are occupying the soil in Alaska have only squatters' rights in the occupancy of their possessions, with an implied promise of preference in the purchase or pre-emption of their homes when the land laws shall be extended, they are still entitled to the peaceful enjoyment of their possessions under the inchoate title they have acquired by such occupancy.

The area of public land upon which Juneau City is situated, being the nearest and most convenient town site to the Silver Bow Basin mines, and to the valuable and rapidly developing quartz ledges on Douglas Island, on the other side of Gastineaux Bay or Inlet, was selected by the early discoverers of these mineral deposits as a rendezvous for the time, and as the

number of people increased, and the necessity became urgent and apparent, they banded together as a community for their protection and convenience, procured a survey of the town site by mutual consent, and dedicated as far as was possible under the circumstances the easement, such as streets and alleys to the use of the public.

It is a well-established principle of the common law that property may be dedicated to public use. It is founded in public convenience and has been sanctioned by the experience of ages. Without such a principle it would be difficult, if not impracticable, for society, emerging from the chaos and confusion inseparable from the first location and settlement of mining camps, to enjoy those advantages which belong to its condition, and which are essential to its growth, perfection, and accommodation.

Some may be slow to appreciate the importance of this principle, but upon reflection it will be observed that the people are wholly dependent on it for highways, streets, alleys, public squares, and places of amusement or of public business in cities and towns. It is not essential that this right of use should be vested in a corporate body. It may exist in the public and have no other limitation than the wants of the community at large. Inhabitants of New Orleans v. U. S., 10 Pet. 662, 9 L. Ed. 573. The community of people residing upon this town site in 1881, had a right to dedicate for public use all the title they possessed, being that of occupancy only of the streets and alleys.

It is said by the court in 10 Pet. 662, 9 L. Ed. 573, supra, that in 1784 the representatives of William Penn, in whom the proprietary right of Pennsylvania was vested by their agent, laid out the town of Pittsburgh. The original plat of the town, the court say, "shows that it was laid out with lots, streets and alleys. * * * All the streets leading south terminate at Water street, and no indication is given in the plat or in any part of the return of the surveyor that it did not extend to the river, as it appears to do by the face of the plat. * * * The street thus extended afforded a large and convenient space for commercial purposes along the shore of the river beyond what was required for a street."

So in this case the beach at the foot of Seward street affords at low tide a convenient space for the piling and carrying away of various articles of merchandise which go upon that street,

and at high tide a safe and convenient landing place for the
various water crafts which ply in the bay and which are the
only means of transportation and travel between Juneau, Doug-
las Island, and other points of land where sawmills, fisheries,
and other industries are rapidly springing up. The question
now arises is the obstruction to the free use of the beach be-
tween tide marks a public nuisance such as will authorize the
interposition of a court of equity.

Nuisances are either public or private. A public nuisance is
such as results from a violation of public rights and producing
no special injury to one more than another of the people. Of
this class are those intangible injuries that result from the im-
moral, indecent acts of parties that become nuisances by rea-
son of their baleful influences upon the morals or well-being
of society. Of this class, also, are most purprestures which
are a class of public nuisances resulting from the appropria-
tion by one or more persons to his or their own use public
property which should be common to all. Ely v. Board of
Sup'rs of Niagara County, 36 N. Y. 297; Wood's Law of
Nuisance, 24 and 25. It has been judicially determined that
Alaska has been since 1867, and now is, a district of our
country under the exclusive jurisdiction and control of the
United States. See Kie v. United States (C. C.) 27 Fed. 351;
United States v. Nelson (D. C.) 29 Fed. 202. This being set-
tled, the question arises as to whether or not any person can
lawfully appropriate to his own use the ground between high
and low water mark in an arm of the sea where the tide ebbs
and flows. The right of Congress to regulate commerce in-
cludes the power to regulate navigation upon the navigable
waters of the United States, and to keep such waters open and
free for the purpose of intercourse with foreign nations and
between different states. Gibbons v. Ogden, 9 Wheat. 1, 193,
6 L. Ed. 23; U. S. v. Coombs, 12 Pet. 72, 9 L. Ed. 1004;
Smith v. Turner, 7 How. 392, 12 L. Ed. 702.

The navigable waters of the United States are those which,
whether fresh or salt, form in their ordinary condition, by
themselves or by uniting with other waters, a continued high-
way over which commerce is or may be carried on with other
states or with foreign countries in the customary modes in
which commerce is conducted by water. The Daniel Ball, 10
Wall. 557, 19 L. Ed. 999; The Montello, 20 Wall. 430, 22 L.
Ed. 391.

The power of Congress upon this subject does not stop at the boundaries of states, and when exercised is exclusive of state authority. Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819; Sinnot v. Davenport, 22 How. 227, 16 L. Ed. 243.

Gastineaux Channel is an arm of the North Pacific Ocean in which the tide ebbs and flows, between the main land and Douglas Island, bearing upon its bosom the commerce of Alaska, floating ships of both large and small tonnage. It is none the less a part of the great ocean, because it is inland. If we could take in a panoramic view the whole apparent aqueous system, we should see that the waters of Alaska are all one mass, apparently as well as really, with the exception of here and there a lake with a subterranean outlet and a few small rivers that lose themselves in bibulous sands.

Certain powers of jurisdiction and control are conferred upon Congress by the Constitution, among which is the right to regulate and define the jurisdiction of the United States courts in relation to admiralty and maritime causes arising upon the high seas, or upon navigable waters within the limits of a state. Const. U. S. art. 3. § 2, Rev. St. § 563 (Comp. St. 1916, § 991).

That navigable water, where the tide ebbs and flows, within three marine leagues of the shore of any part of Alaska, is the property of and subject to the jurisdiction and control of the United States, is too clear to require argument. Have the defendants, then, a right to appropriate to their own use that portion of the beach between high and low water mark at the foot of Seward street, which is essential to the enjoyment of the uses and purposes for which the street was dedicated, and which should be reserved for the use and convenience of the general public? When the United States permitted people to enter upon and occupy the public domain in Alaska, public law and public policy implies that they shall in their collective capacity be protected against the encroachment of each other in the use and enjoyment of the privileges necessary to the utility and benefits of the rights which have been acquired.

It has been claimed that the defendants, McGlinchy and Forrest, are entitled to protection as riparian owners; but this position is wholly untenable, since it does not appear that either of them have any claims even as squatters to the soil adjoining the beach.

Riparian rights depend wholly upon the ownership of land contiguous to the water, and are the same, whether the propri-

etor of such land owns the soil under the water or not. Those owning or claiming lands which border upon tide waters are called "littoral" proprietors, and the term is now in general use, and should be employed, rather than "riparian," in respect to the shores of the sea. Boston v. Lecraw, 17 How. 432, 15 L. Ed. 118. It is argued, also, that the plaintiffs, Koehler and Howard, have no right to maintain this action for themselves specially and for the public generally. But it will be observed that Koehler testified that the portage over which his merchandise is necessarily packed now is increased and the expenses augmented in consequence thereof.

While it is true as a principle that the party suing must show that he has and is sustaining an individual injury before he can be heard, yet, when that fact is made to appear, he is in the attitude of redressing a continuing trespass and wrong against himself, and acts in behalf of all others who are or may be injured. A bill in equity to abate a public nuisance, filed by one who has sustained damages, has, it has been said, succeeded to the former mode in England of an information in chancery, prosecuted in behalf of the crown, to abate or enjoin the nuisance as a preventive remedy. See Mississippi & Missouri Railroad v. Ward, 2 Black, 485, 17 L. Ed. 311. See, also, the Mining Débris Case (C. C.) 16 Fed. 25, 8 Sawyer, 628.

From a careful review of the authorities at command, I cannot well escape the conclusion that the people of Juneau have a right to the free use of Seward street, and of the beach at the foot of the street to low-water mark, and that the defendants were trespassers when they erected the obstructions spoken of, both against the United States and the people or community of Juneau, who have acquiesced in the location of and enjoyed benefits arising from the use of the street.

The decree of the court will be that, within six months from this time, defendants shall remove the obstructions, from the foot of and of the width of Seward street, to low-water mark, and that they and each of them be perpetually restrained and enjoined from continuing the present obstructions, or erecting any similar or any obstruction whatever on that portion of the beach lying between the foot of Seward street and on a line therewith and low-water mark.