UNITED STATES v. DE COURSEY.

(District Court, N. D. New York. August 17, 1897.)

1. INDICTMENT — VIOLATION OF INTERSTATE COMMERCE ACT — DESCRIPTION OF OFFENSE.

An indictment under section 2 of the interstate commerce act, which fully and amply alleges all the details of time, place, distance, amount, and kind of freight transported for A., and then charges that the service was for a less compensation than was received from B. "for doing for him a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions," sufficiently describes the services rendered for B.

2. RECEIVER OF RAILROAD — CRIMINAL LIABILITY — FAILURE TO OBSERVE JOINT RATE.

A receiver not being bound to continue contracts made before his appointment, is not criminally liable, under section 6 of the interstate commerce act, for the violation of a joint tariff previously established by the railroad company of which he is receiver and another company, and which he has not ratified, adopted, or recognized in any way.

William F. Mackey, Asst. U. S. Atty., and John T. Marchand, for the United States.

John G. Milburn, for defendant.

COXE, District Judge. The indictment contains two counts. The first count alleges that the defendant, being receiver of the Western New York & Pennsylvania Railroad Company and a common carrier, received from one George E. Henry, for transporting his coal, more money than he received from the Fairmount Coal & Coke Company for doing a similar service; that this was accomplished by means of a drawback paid the Fairmount Company of $485.41; that the payment of this sum was an unlawful and unjust discrimination in favor of the coal company and against said Henry which is prohibited by section 2 of the interstate commerce act. It is argued that this count is defective for the reason that it fails to state facts sufficient to sustain the charge of unjust discrimination. There is no allegation, it is said, stating the kind of merchandise transported for Henry or the points between which it was carried or the amount received from him. In a strict technical sense this is true. But, on the other hand, it will be admitted, that the allegation as to the transaction with the Fairmount Company is ample and concise. All the details of time, place, distance and amount are there clearly stated. The indictment then proceeds, using the language of the statute, to charge that the service was for a less compensation than was received from Henry "for doing for him a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions." This language imports into the averment regarding Henry the statements already made concerning the coal company. For instance, there can be no doubt that the allegation is that the merchandise carried for Henry was coal; that in June, 1894, it was conveyed from Sligo Branch mines and Fairmount, or near these places, to the city of Buffalo, or near that city, in about the same quantities as that shipped by the

coal company and that the defendant charged and collected from Henry a greater sum (inferentially $485.41) than from the coal company. It is true that these details might have all been repeated in charging the facts as to the service rendered to Henry and, probably, it would have been better pleading, had this course been adopted. In the case of U. S. v. Hanley, 71 Fed. 672, cited by the defendant, there was no basis of comparison. A rebate was alleged in several instances, but it was not averred that any shippers, similarly situated had failed to receive the same rebate. There was, in short, a failure to charge any unjust discrimination. Here, on the contrary, the name of the party unfairly treated is given so that there can be no pretense that the defendant can be misled in this regard. The offense charged is a misdemeanor, the indictment follows the language of the statute and the court cannot doubt that the defendant is fully informed of the nature of the accusation against him. It is thought that the demurrer, so far as it relates to the first count, must be overruled.

The second count of the indictment is based upon section 6 of the act as amended March 2, 1889, and charges the defendant with having received from the Fairmount Coal & Coke Company and from the firm of C. N. Shipman & Co. less than the legally established rate for the transportation of their property. The law provides that it shall be unlawful for any common carrier, party to any joint tariff, to receive from any person a less compensation for the transportation of merchandise between any points as to which a joint rate is named than is specified in the schedules filed with the commission in force at the time. The indictment alleges that prior to June 1, 1894, the Western New York & Pennsylvania Railroad Company and the Allegheny Valley Railroad Company had established joint tariff rates and charges for the transportation of coal over their continuous line and had filed a schedule of these rates with the commission. The indictment also alleges that the defendant is, and, at all times therein mentioned, was the receiver of the Western New York & Pennsylvania Railroad Company. The question is whether a receiver can be held criminally liable for departing from the rates named in a schedule adopted by the company before he became receiver and to which he is not a party? It is not obligatory upon carriers operating continuous lines to establish joint tariffs, but if they do establish such tariffs they must be filed with the commission. The appointment of the receiver unquestionably changed the status of the parties. He took possession of the road superseding the corporation, ousting it of control and operating the property as an independent carrier. The corporate franchises were for the time being, suspended, the property sequestrated and the receiver was in charge, under the direction of the court, to preserve the property for the benefit of the creditors. He was not the agent of the corporation and was not bound to continue an unwise or improvident agreement. Whether he could enter into a new joint tariff without leave of the court, is, at least, doubtful. The statute makes it unlawful for any carrier who is a "party to any joint tariff" to charge, etc. The defendant is not a party to the joint tariff in question for it was established be-

fore he was appointed receiver. There is no allegation that he subsequently became a party to the tariff or that he ratified, adopted or recognized it in any way. It may very well be, in such cases, that it is not for the interest of the trust that contracts and conditions before existing shall be continued. In the present instance the defendant is charged with a crime because he received from a shipper less than a rate established before he existed as receiver and with which he had nothing whatever to do. The rate may have been one which he was not justified in maintaining and certainly if he could not have been held to the schedule in a civil action he cannot be in a criminal action. It seems too plain for argument that no man can be convicted of a crime in failing to keep an agreement unless he is under some obligation to keep it. The defendant here was not a party directly or indirectly to the joint tariff agreement. No authority is cited and it is believed none can be found holding a receiver guilty of a crime in such circumstances. The precise question here presented is believed to be novel, but the general proposition that a receiver is not bound to continue a contract entered into before his appointment and that he acts, not as the agent of the insolvent corporation, but as an independent carrier, is established by abundant authority. Express Co. v. Railroad Co., 99 U. S. 191; Central Trust Co. of New York v. Marietta & N. G. Ry. Co., 51 Fed. 15; Metz v. Railroad Co., 58 N. Y. 61; Davis v. Duncan, 19 Fed. 477; Central Trust Co. of New York v. Ohio Cent. R. Co., 23 Fed. 306; Jones, Corp. Bonds, § 502; High, Rec. § 396; Beach, Rec. § 363; Gluck & B. Rec. p. 316; 20 Am. & Eng. Enc. Law, p. 375.

The demurrer, so far as it relates to the second count, is sustained.