## SIMS et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1903.)

### No. 874.

1. ALIENS—EXCLUSION—CHINESE—STATUTES—EXPIRATION—PENALTIES.

Act July 5, 1884 (23 Stat. 117, c. 220 [U. S. Comp. St. 1901, p. 1305]). prohibited any person from aiding or abetting the landing of any Chinese person not lawfully entitled to enter the United States. and declared that the act should be in force for 10 years. On May 5, 1892, before the prior act had expired, the laws relating to the exclusion of Chinese were re-enacted for a further period of 10 years. Rev. St. § 13 (Act Feb. 25, 1871, c. 71, 16 Stat. 432 [U. S. Comp. St. 1901, p. 6]), declares that the repeal of any statute shall not release or extinguish any penalty incurred thereunder, unless the repealing act shall expressly so provide, but such statute shall be treated as remaining in force to sustain any action or prosecution for the enforcement of such penalty. Held, that where an offense against the exclusion act was alleged to have been committed on February 15, 1902, an indictment therefor not brought until after the expiration of the time limited by the act of May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1319]) was not demurrable, since the exclusion act was continued in force as to such offense by section 13.

2. SAME.

Act May 5, 1902, expressly continuing in force all laws prohibiting and regulating the coming into the country of Chinese persons, did not create a new law nor repeal any of the laws then in existence, but continued in force, without interruption, the Chinese exclusion act of May 6, 1882 (22 Stat. 58, c. 126), as amended by act July 5, 1884 (23 Stat. 117, c. 220 [U. S. Comp. St. 1901, p. 1305]). and extended for 10 years by act May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1319]).

3. SAME—INDICTMENT—SUFFICIENCY.

In a prosecution for aiding and abetting the landing of certain Chinese, prohibited by act July 5, 1884, an indictment charging that defendants did unlawfully and knowingly land, and aid and abet in landing, in the United States, from a certain foreign steamship specified, then lying at the port of T., three certain male Chinese laborers, named, each of whom was not lawfuly entitled to enter the United States, which had previously been brought on such steamship from the empire of China, was not demurrable for failure to set out the facts constituting the alleged unlawful landing.

4. SAME.

Where, in a prosecution for aiding and abetting the illegal landing of Chinese laborers, the indictment alleged that the landing was effected from a foreign steamship lying in the port of T., and that such laborers had been brought into the United States at such port on such steamship from the empire of China, it was not objectionable in that it showed that the Chinese alleged to have been landed had already entered the United States.

5. SAME—REPUGNANCY.

Under act July 5, 1884, prohibiting any person from aiding or abetting the landing of any Chinese person brought into the United States from any vessel, an indictment charging defendants with "aiding and abetting," and immediately thereafter charging them with "landing" Chinese, was not objectionable for repugnancy, since, as defendants were liable as principals for aiding and abetting the commission of the offense, the further charge of "landing the Chinese" was surplusage, and not repugnant to the other charge.

¶ 1. Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.

**6. SAME—KNOWLEDGE.**

Act July 5, 1884, provides that any person who shall "knowingly" bring into or cause to be brought into the United States, or aid or abet the landing in the United States, from any vessel, any Chinese person, etc., shall on conviction be punished. *Held*, that the word "knowingly," as so used, referred to knowledge of the fact of landing and not knowledge that the Chinese landed were not legally entitled to enter the United States.

**7. SAME—APPEAL—REVIEW—OBJECTION IN TRIAL COURT.**

An objection to an indictment on the ground of repugnancy cannot be reviewed on appeal when it was not raised in the Circuit Court.

**8. SAME—NEGATIVING EXCEPTIONS.**

An indictment for violation of Chinese exclusion act 1882, as re-enacted by act April 29, 1902 (32 Stat. 176, c. 641), declaring that all laws now in force prohibiting and regulating the coming of Chinese persons be, and the same are, re-enacted, extended, and continued, so far as the same are not inconsistent with treaty obligations, was not objectionable for failure to charge that the Chinese alleged to have been landed in violation of the act were not entited to land by virtue of treaty obligations.

In Error to the District Court of the United States for the Northern Division of the District of Washington.

A. W. Buddress, for plaintiffs in error.

Jesse A. Frye and Edward E. Cushman, for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error were jointly indicted on June 7, 1902, for the offense of unlawfully landing, and aiding and abetting in landing, three male Chinese laborers, at Seattle, Wash., on February 15, 1902, from a foreign vessel at Port Townsend, Wash. The indictment contained two counts for the illegal landing of the same Chinamen. The plaintiffs in error demurred to each count on the ground that in neither of them are facts stated sufficient to constitute an offense against the laws of the United States. The demurrer was overruled. Upon a plea of not guilty, the plaintiffs in error were tried and convicted. They moved in arrest of judgment upon the ground which was stated in their demurrer. The motion was overruled, whereupon the plaintiffs in error were sentenced to imprisonment and fine.

It is contended that the prosecution of the plaintiffs in error in this case is an attempt to punish them after the expiration of a temporary statute for its violation. The indictment charges them with the violation of section 11 of the act of July 5, 1884 (23 Stat. 117, c. 220), which reads as follows:

"That any person who shall knowingly bring into or cause to be brought into the United States by land, or who shall aid or abet the same, or aid or abet the landing in the United States from any vessel, of any Chinese person not lawfully entitled to enter the United States, shall be deemed guilty of a misdemeanor, and shall, on conviction thereof, be fined a sum not exceeding one thousand dollars, and imprisoned for a term not exceeding one year."

This act amends the corresponding section of the original Chinese exclusion act of May 6, 1882 (22 Stat. 61, c. 126 [U. S. Comp. St.

¶ 7. See Criminal Law, vol. 15, Cent. Dig. § 2627.

1901, p. 1310]). Both the original and the amendatory act were by their terms to be and remain in force for a period of 10 years. On May 5, 1892, before the 10-year limit of the amendatory act had been reached, Congress re-enacted all Chinese exclusion laws for another period of 10 years by the following section (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1319]):

"That all laws now in force prohibiting and regulating the coming into this country of Chinese persons and persons of Chinese descent are hereby continued in force for a period of ten years from the passage of this act."

It is argued that all Chinese exclusion laws which were in force on February 15, 1902, the date of the alleged commission of the offense with which the plaintiffs in error are charged, were only temporary statutes, and by their express terms expired on May 4, 1902, more than a month before the plaintiffs in error were indicted, and that the court had no power to try and sentence the plaintiffs in error for violation of a temporary act after its expiration. In support of this contention reference is made to Yeaton v. United States, 5 Cranch, 281, 3 L. Ed. 101; The Irresistible, 7 Wheat. 551, 5 L. Ed. 520; Moore v. United States, 29 C. C. A. 269, 85 Fed. 465; United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153. It is true that these cases sustain the general doctrine as stated by Chief Justice Marshall in the case first cited, that "it has long been settled on general principles that, after the expiration or repeal of a law, no penalty can be enforced nor punishment inflicted for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute." The statute under discussion in that case had been repealed, and a special provision had been made in the repealing act as follows:

"Provided nevertheless that persons having offended against any of the acts aforesaid may be prosecuted, convicted and punished, as if the same were not repealed, and no forfeiture heretofore incurred by a violation of any of the acts aforesaid shall be affected by such repeal."

It was held that this was not a sufficient provision for the punishment of the violation of an act which had itself been repealed. After that decision was made, Congress by section 13 of the Revised Statutes, which was enacted in 1871 (Act Feb. 25, 1871, c. 71, 16 Stat. 432 [U. S. Comp. St. 1901, p. 6]), provided as follows:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

This statute is clearly sufficient to sustain the ruling of the Circuit Court upon the demurrer to the indictment in this case, even if it were a case in which the doctrine of Yeaton v. United States was applicable. But we do not regard it as such a case. The act of May 5, 1902, expressly continues in force all the laws prohibiting and regulating the coming into this country of Chinese persons and persons of Chinese descent. It is a particular provision continuing such laws in force for all purposes. It went into effect while those laws were still in existence. There was no break, no hiatus, in the existing

legislation providing for the exclusion of Chinese and for the punishment of infractions of the act. The act of May 5, 1902, did not create a new law or repeal the old. It simply extended the life of the existing statutes.

It is contended that the indictment is insufficient for the reason that the facts which constitute the alleged unlawful landing of the Chinese laborers are not therein set forth. The indictment charges that the plaintiffs in error "did unlawfully and knowingly land and aid and abet in landing in the United States from a certain foreign steamship and vessel known and called the Wilhelmina, then lying at the port of Port Townsend, county of Jefferson, and state of Washington, three certain male Chinese laborers, each of whom was not lawfully entitled to enter the United States, to wit, Chin John, Tom Dip, and Wong Hing, * * * each and all of said Chinese laborers above named having immediately theretofore been brought into the United States at the port of Port Townsend on said steamship and vessel from the empire of China." This indictment follows the language of the statute in which the statutory offense is defined. We know of no reason why such an indictment is not sufficient, or why there should be in this case a departure from the general rule that the offense is sufficiently charged if the indictment follow the words of the statute in setting forth the facts which constitute it. We discover nothing in the statute to indicate that it was the obvious intention of the Legislature to require more particularity, nor is the offense charged one that is analogous to any common-law offense, so as to require greater nicety and particularity in its description. United States v. Gooding, 12 Wheat. 460, 474, 6 L. Ed. 693; Heard, Criminal Pleading, 173; 10 Enc. Pleading & Practice, 483; Peters v. United States, 36 C. C. A. 105, 94 Fed. 127.

Nor is there ground for holding that the indictment is insufficient for the reason that it shows that the three Chinamen so alleged to have been landed by the plaintiffs in error had already entered the United States. They were alleged to have been brought upon a foreign vessel which had arrived from the empire of China and was lying at the port of Port Townsend. It was the act of aiding and abetting in landing them from the vessel with which the plaintiffs in error were charged, and the nature of their act was not affected by the fact that the landing was not had at the port where the foreign vessel lay, but was completed at another port on Puget Sound, the port of Seattle.

It is said that there is such repugnancy between different parts of each count as to render the indictment fatally defective. The repugnancy is said to consist in the fact that each count charges the plaintiffs in error as principals and immediately thereafter charges them as accessories in the commission of the same offense. We cannot say that it was error to sustain such an indictment. The statute made unlawful the act of aiding and abetting the landing of the prohibited Chinese. Those who aid and abet in the commission of such an offense are principals. To add to the charge of "aiding and abetting" the further charge of "landing" the Chinese was, at most, surplusage. It was not repugnant to the other charge. This question,

however, is not properly before us. It was not raised in the Circuit Court. There was no motion or demurrer directed against the indictment on the ground of repugnancy.

It is contended that the indictment is fatally defective for the reason that it does not charge that the plaintiffs in error knew that the Chinamen were not legally entitled to enter the United States. The act which is rendered unlawful is the act of "knowingly" aiding and abetting in landing Chinese not lawfully entitled to enter the United States. The act contemplates that all persons who shall aid and abet Chinese in landing from a foreign vessel must first know that such Chinese are lawfully entitled to enter the United States, and that without such knowledge they assume the risk of incurring the penalty of the act. The word "knowingly" so used in the statute refers to knowledge of the fact of landing, and was intended to recognize a distinction between a landing knowingly aided or abetted in and one unwittingly or unconsciously aided; such, for instance, as where a Chinaman might effect a landing from a vessel as a stowaway in another vessel.

It is contended that the indictment is defective for the reason that it fails to negative the exception contained in the penal section of the Chinese exclusion act of 1882 and in the enacting clause of the act of April 29, 1902 (32 Stat. 176, c. 641), which declares that "all laws now in force prohibiting and regulating the coming of Chinese persons * * * be and the same are re-enacted, extended and continued so far as the same are not inconsistent with treaty obligations." It is urged that the indictment should have proceeded further, and negatived this exception, and should have charged that none of the said Chinese persons were lawfully entitled to enter the United States under treaty stipulations. The rule is that only such exceptions and provisos need be negatived as are found in the enacting clause of the statute, and that, in any event, no exception or proviso need be negatived that is not descriptive of the offense. United States v. Nelson (D. C.) 29 Fed. 202. If the three Chinese referred to in the indictment were entitled to land in the United States by virtue of treaty obligations, that fact was one that should have been pleaded in defense. We find no error in the record.

The judgment of the District Court is affirmed.