UNITED STATES v. PENNSYLVANIA R. CO.

(District Court, W. D. New York. April 4, 1907.)

1. CARRIERS—DISCRIMINATION—INDICTMENT—JOINT RATES—FILING.

Where in a prosecution against a carrier for discrimination in violation of the Interstate Commerce Law, Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3158], the indictment alleged that a common arrangement existed between defendant and three other connecting carriers named for a continuous forwarding of property, in interstate commerce, between two specified points, and that defendant kept open for public inspection its printed tariff of rates, and filed the same as required by law, with the allegation that the shipment in question was accompanied by written shipping orders, waybills, and transfer slips showing a continuous shipment between such points, it sufficiently charged the establishment of a joint tariff of rates for the commodity in question, without alleging that all the connecting carriers concurred in such joint rate, or that it was filed with the interstate commerce commission by their joint action.

2. SAME—JOINT RATE—DEPARTURE.

Where a tariff has been established on a commodity for a through interstate shipment, as provided by Interstate Commerce Law, Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3158], there can be no departure therefrom unless made according to law.

3. SAME—DIFFERENT ROUTES.

Interstate Commerce Law, Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3158], declares that it shall be unlawful for any common carrier, party to any joint tariff, to charge or receive a greater or less compensation for the transportation of persons or property or for any services in connection therewith, between any points as to which a joint rate is named thereon than specified in the schedule filed by the commission in force at the time. *Held*, that the words "between two points" did not limit such section to points on the established route, but that the section prohibited the transportation of property between terminals in different states at a greater or less rate than the established rate, without reference to routes.

4. SAME—INDICTMENT.

Where an interstate carrier was indicted for charging a lower rate than that established by a filed joint tariff over a specified route for

153 F.—40

transportation of petroleum between the same termini over a different route, the indictment was not defective for failure to allege that the lower rate over the latter. route was not scheduled and filed as required by Interstate Commerce Law, Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3158].

5. SAME—BURDEN OF PROOF.

In a prosecution of an 'interstate carrier for·charging a less rate for the transportation of petroleum between two specified termini in different states than that scheduled in a filed joint tariff, in violation of Interstate Commerce Law, Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3158]; the burden is on the government to show a common arrangement for a continuous carriage between the points mentioned in the filed joint tariff.

6. SAME—INDICTMENT—THROUGH SHIPMENT.

An indictment against an interstate carrier for discrimination alleging that, under a common arrangement between the connecting carriers, the commodity which was contained in tank cars was transported without stoppage or interruption and was accompanied by written shipping orders, waybills, and transfer slips indicating a through transportation, the rate and place of destination, sufficiently alleged prima facie a common arrangement between the carriers for a through shipment.

On Demurrer to Indictment.

Charles H. Brown and S. Wallace Dempsey, for the United States. Frank Rumsey, for defendant.

HAZEL, District Judge. The indictment in 23 counts charges that the defendant, the Pennsylvania Railroad Company, the New York Central & Hudson River Railroad Company, the Boston & Maine Railroad Company, and the Rutland Railroad Company established a joint traffic arrangement for the transportation of petroleum from Olean, N. Y., to Rutland, Vt., and a schedule showing the rates and charges for the transportation thereof between such points to be 19 cents per 100 pounds was filed with the Interstate Commerce Commission; that subsequently, while said traffic arrangement was in force, the defendant transported petroleum in tank cars from Olean to Rutland for the Standard Oil Company of New York over another route at the rate of 16.1 cents per 100 pounds, under an alleged arrangement for a continuous carriage with the New York Central & Hudson River Railroad Company and the Rutland Railroad Company, connecting carriers; and that the defendant deviated from the joint rate so published and filed in giving. the Standard Oil Company a concession whereby its product could be forwarded to Rutland at less than the established rate. The provision of section 6 of the interstate commerce law (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3158]), under which the offense is charged, reads:

"It shall be unlawful for any common carrier, party to any joint tariff, to charge, demand, collect or receive from any person or persons a greater or less compensation for the transportation of persons or property, or for any services, in connection therewith, between any points as to which a joint rate, fare or charge is named thereon than is specified in the schedule filed with the Commission in force at the time."

The twenty-fourth count charges the defendant with a violation of the Elkins act in willfully failing to file and publish the tariff arrangement between the. defendant and the connecting carriers over whose

lines the commodity was transported. The defendant has demurred to the indictment on the grounds that it does not allege a joint tariff arrangement between the defendant and the three mentioned connecting carriers; that no deviation from an established rate is shown; that it is not alleged that the rate at which petroleum was conveyed was not duly published and filed; that the indictment discloses an intrastate shipment, and accordingly the defendant could legally forward the freight over a different route specified between the same termini. The objections will be considered briefly in the order stated.

1. The allegations that a common arrangement existed between the defendant and the three connecting carriers named for a continuous forwarding of property, in interstate commerce, from Olean to Rutland, and that the defendant kept open for public inspection its printed tariff of rates and filed the same as required by law, together with the allegation that the shipment was accompanied by written shipping orders, waybills and transfer slips showing a continuous shipment from Olean to Rutland, sufficiently charge prima facie the establishment of a joint tariff of rates for the commodity in question. A specific charge that all the connecting carriers concurred in such joint rate, or that it was filed with the Interstate Commerce Commission by their joint action is not essential to the validity of the indictment. Such allegations would seem to be assertions of fact which may be presumed within the defendant's own knowledge, and therefore particularity of pleading in relation thereto is not necessary. 22 Cyc. 306.

2. In the decisions handed down to-day in the indictments against the Standard Oil Company of New York, this court said that, when a tariff of rates has been established on a commodity for a through interstate shipment under the provisions of section 6 of the interstate commerce act, there can be no departure therefrom unless made according to law. It is optional with railroad companies which have connecting facilities for a through shipment interstate to enter into a compact establishing a joint traffic rate for the continuous shipment of property between termini and for their proportional tariff rates, but, whenever such an arrangement has been made, then the act to regulate commerce steps in and points out to shippers the method by which a uniform rate and equality of treatment may be secured. If section 6 of the act were given the narrow construction claimed by defendant, namely, that the phrase "between two points" is limited to points on the established route and does not extend to any other route which the carrier may secretly establish, then manifestly the provisions of the act are ineffectual. The full text of the act to regulate commerce necessitates a broader interpretation, and I think that the clause containing the words quoted forbids the transporting of property between terminals in different states at a greater or less rate than the established rate.

3. The next point relates to the failure to allege in the indictment that the rate over the so-called Norwood Route, over which the property was conveyed to Rutland, was not published and filed. If such rate in fact was published and filed as required by law, evidence thereof may be given by the defendant on the trial. It is undeniable that several continuous routings between points in different states and different tariff rates between the same termini are not forbidden by the

statute. A publication and filing, however, of such established tariff rates by carriers subject to the provisions of the act for the information and inspection of shippers is required to the end that one shipper may not be favored over another. Gulf, etc., v. Hefley, 158 U. S. 101, 15 Sup. Ct. 802, 39 L. Ed. 910. But the omission to allege that the lower rate over the Norwood Route was not scheduled and filed as provided by the act is not thought fatal to the indictment. Upon this point counsel for the government cites United States v. Nelson (D. C.) 29 Fed. 202, and Shelp v. United States, 81 Fed. 694, 26 C. C. A. 570. Although these cases do not decide the precise point here considered, yet the rule there stated by analogy bears upon the same.

4. Further objection is made that the indictment does not properly allege a shipment to Rutland via Rochester and Norwood under through bill of lading and a conventional division of the tariff rate for such shipment, and hence no arrangement for a through shipment within the meaning of the act to regulate commerce is shown. If, as suggested by the defendant, the forwarding was simply from Olean to a point of junction with the New York Central & Hudson River Railroad under a local bill of lading, and was not pursuant to an arrangement for a continuous shipment, then the statute manifestly has not been violated. The burden is upon the government to show a common arrangement for a continuous carriage between the points mentioned. Upon this point the case of Cin., N. O. & Tex. Pac. Railway v. Int. Com. Com., 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935, is illuminative. There it is held:

"That when goods shipped under a through bill of lading, from a point in one state to a point in another, are received in transit by a state common carrier, under a conventional division of the charges, such carrier must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the act to regulate commerce."

And the court, continuing, says:

"When we speak of a through bill of lading, we are referring to the usual method in use by connecting companies, and must not be understood to imply that a common control, management, or arrangement might not be otherwise manifested."

See, also, United States v. Seaboard Railway Co. (C. C.) 82 Fed. 563.

In United States v. Camden Iron Works (D. C.) 150 Fed. 214, Judge Holland, on motion in arrest of judgment and for new trial, substantially says that any evidence which tends to establish that a commodity was transported on a through bill of lading or any other document or writing from any place in the United States, the shipment being interstate upon a contract of continuous shipment, the defendant must be deemed to have subjected its road to an arrangement for a through forwarding of freight within the purview of the act to regulate commerce. The indictment in this case specifically alleges that under a common arrangement between the carriers the commodity, which was contained in tank cars, was transported without stoppage or interruption, and was accompanied by written shipping orders, waybills, and transfer slips, indicating a through transportation, the rate, and place of destination. This allegation I think is prima

facie evidence that the shipment was under a common arrangement between the carriers for a through shipment.

5. The fifth point relates to the claim that different rates for transportation between the same termini may exist contemporaneously, and are available to both shipper and carrier. I have already intimated my views upon this point. My attention has not been directed to any objection in the statute to the establishment of several continuous routes between points located in different states under a conventional division of the charges. The cases cited upon this proposition by the defendant (Pankey v. Richmond & Danville Co., 3 Interst. Com. R. 33, and Dewey Bros. Co. v. B. & O. R. R. Co., 9 Interst. Com. R. 481) are not thought to throw any particular light upon the subject under consideration. The defendant contends particularly that the failure to allege in the indictment the existence of a joint rate with the carriers of the petroleum in question was a fatal defect in pleading, and, moreover, that the intrastate character of the shipments affirmatively appears from the allegations relating to a total rate charged. As stated elsewhere in this decision, it is incumbent upon the government to show a common arrangement for a continuous shipment under a conventional division of the tariff rates with the carriers mentioned in the indictment; but such an arrangement may be shown in the manner set forth by the Supreme Court in Cin., N. O. & Tex. Pac. Railway v. Int. Com. Com., supra. See, also, United States v. De Coursey (D. C.) 82 Fed. 302. The cases cited apparently are a complete answer to the point that the consent of the other connecting carriers to the establishment of a joint rate is not shown. The concurrence would seem to be shown by the facts contained in the indictment charging an arrangement with the other railroad companies for a through shipment of petroleum at an agreed rate from Olean to Rutland. The manner in which the entire rate charged the shipper was apportioned among the carriers is unimportant. Under the circumstances, the defendant became subject to the provisions of the interstate commerce act, and in my opinion was obliged for the benefit of the public to file a schedule of its rates with the interstate commerce commissioners.

The indictment sufficiently charges, first, a deviation from joint tariff rates for the transportation of petroleum from Olean to Rutland, a rate which had been filed and scheduled in accordance with the law; and, second, that the defendant willfully failed to file and publish the tariff of rates over the Norwood route, the route over which the commodity was conveyed.

It follows that the demurrer interposed by the defendant must be overruled.